**Clifford GEE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 278S38.

Supreme Court of Indiana.

May 22, 1979.

Geoffrey A. Rivers, Muncie, for appellant.

Theo. L. Sendak, Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

The appellant. was tried before a jury in Delaware Circuit Court. On October 6, 1977, he was found guilty of inflicting physical injury in the commission of robbery and was sentenced to life imprisonment. The crime involved the robbery of a Hallmark Card Shop in which Joan Sipes, an employee of that store, was beaten. The robber entered the store and said he was looking for an anniversary gift. He picked up a glass enclosed flower and brought it to the counter. Mrs. Sipes rang up the sale and as she was reaching for wrapping paper, the man drew a mental bar about 14–18 inches long from his canvas back pack and hit her over the head. He took money from the cash drawer and put it in his pack and took money from Mrs. Sipes' purse. He then beat her on her arms, hands and head. The robber left and she went next door for help. Muncie police officers arrived at the scene within minutes and took Mrs. Sipes to the hospital where she was admitted. After a call from an informant a search warrant was issued, police searched Gee's apartment and arrested him on August 12.

Appellant presents twenty errors in his statement of issues, which are specified in his Motion to Correct Errors as follows:

1. That the Court erred in denying the Defendant's Motion to Suppress Evidence and Controvert Search Warrant.

2. That the Court erred in allowing Police Officers Stonebreaker and Cox to testify at the suppression hearing to prove probable cause for issuance of said Warrant.

3. That the Court erred in allowing one of the State's main witnesses, Muncie Police Officer, Paul Cox to be in the Court Room throughout the trial after granting the defendant's Motion for a Separation of Witnesses.

4. That the Court erred in allowing State's Exhibit # FF into evidence without establishing a chain of custody.

5. That the Court erred in allowing State's Exhibits # Y, Z, AA, BB, CC, and DD into evidence because they were not properly identified and no chain of custody was established.

6. That the Court erred in overruling Defendant's Motion to Strike the testimony of Officer Scroggins when he referred to and read from his Reports to the jury instead of using them only to refresh his memory.

7. That the Court erred in overruling the defendant's objection and allowing State's Exhibits A, B, C, D, E, F, G and H, photographs of the victim, to be shown to the jury because the injuries had been previously described and the pictures would prejudice and inflame the jury.

8. That the Court erred in overruling the defendant's Motion to Strike State's Exhibits D, and F when Officer Stonebreaker later testified that he did not see the two photographs.

9. That the Court erred in allowing State's Exhibit # X—a glass enclosed flower, into evidence over the objection of the defendant without establishing a chain of custody.

10. The Court erred in overruling the defendant's objection to allowing the Prosecutor to read portions of a prior statement to witness Debra Swallow as it contained leading questions and the statement was not in evidence.

11. That the Court erred in overruling the defendant's objection to Police Officer Paul Cox's testimony as to admissions against interest allegedly made by the defendant after the Prosecutor failed to produce said statements pursuant to the Discovery Order.

12. That the Court erred in overruling the defendant's objection to any statements made by the defendant to the Police after he had been held in jail for 5 days on this charge.

13. That the decision was contrary to law.

14. That the Court erred in overruling the Defendant's Motion for Mistrial because of the misconduct of a juror.

15. That the Court erred when it failed to make sufficient inquiry to determine whether or not defendant was being unlawfully detained when photographs of Defendant were taken, to show to Joan Sipes, at her home, and to Bonnie Erby.

16. That the Court erred when it failed to rule that the in-court identification made of Defendant by Joan Sipes and Bonnie Erby was tainted by the out of court identification.

17. That the Court erred in not granting a mistrial, because the defendant was denied right of counsel at a critical stage of the pre-trial investigation.

18. That the Court erred by failure to instruct jury that the burden of proving an alibi does not rest on the defendant, but on the State and the State must prove it beyond a reasonable doubt and the elements of the offense charged including the defendant's presence at the place of the crime, the time of its commission where that is essential as to defendant's guilt.

19. That the Court erred in not determining why there was a long delay by the State before arraignment of defendant.

20. That the Court erred when he stated, "I want the prosecutor and defense attorney to have completed their presentations by noon, because I want the case over by the close of the Court day" (referring to 5:00 p. m.) because the jury is prone to consider the challenged statement as a mandatory and unequivocal directive to reach a verdict.

This motion to correct errors was overruled on December 19, 1977.

■ Alleged errors are grouped in the argument section of appellant's brief. They will be treated as argued when possible. Alleged errors numbered 11, 12, 15, 17 and 19, are combined as they all relate to the detention of the defendant. All of these errors and the arguments thereon are intertwined. In an effort to unravel the specific allegations of error and the related arguments, these errors will be dealt with separately. We will use appellant's numbers to identify these alleged errors. Appellant declines argument on errors numbered 8, 10, 18 and 20, therefore they are waived. *Guardiola v. State*, (1978) Ind., 375 N.E.2d 1105, Ind.R.A.P. 8.3(A)(7).

### I.

■ Appellant's alleged errors number 1 and 2 are argued together. Appellant argues that the court erred in denying his Motion to Suppress Evidence and Controvert Search Warrant and in allowing police officers Stonebreaker and Cox to testify.

On September 30, 1977, there was a hearing on defendant's Motion to Suppress. After the defense had made its argument on this motion the State presented evidence with their argument against the motion. This testimony at the suppression hearing is the basis of appellant's allegation of error. The court denied defendant's Motion to Suppress. However, the items specified in the search warrant and seized from the defendant's apartment were never introduced into evidence. In order to raise error in the denial of a motion to suppress, it must be shown that the defendant was prejudiced by the trial court's action and that illegally-seized evidence was admitted

against him. Appellant admits that the boxes containing the items seized from his apartment were never introduced into evidence. Appellant's remedy if items were illegally seized would be to have had his motion to suppress granted to prevent the items from being introduced into evidence. He cannot claim error on appeal based on the denial of his motion to suppress or in the allowing of testimony of police officers at the suppression hearing regarding the search warrant, when the items were not introduced into evidence at trial. There is no merit to these allegations of error.

### II.

■ Appellant next claims in his specification number 3, that the trial court erred in allowing State's witness, Paul Cox, a Muncie police officer, to remain in the courtroom after granting the defendant's Motion for a Separation of Witnesses. He argues that Officer Cox's testimony prejudiced him because Cox testified about the chain of custody of Exhibit X, a glass-enclosed flower, and that his testimony tended to rehabilitate testimony of State's witness Debra Swallow.

After the defense motion for a separation of witnesses, the State asked to have Sgt. Paul Cox exempted from the ruling granting the separation of witnesses. The defense objected and this objection was overruled. Officer Cox testified about his actual participation in the investigation of the robbery and the statement he took from the defendant. Sgt. Cox had collected items from the card shop and it was proper for the State to use his testimony to establish the chain of custody for Exhibit X. In *Hilligoss v. State*, (1970) 253 Ind. 443, 446, 255 N.E.2d 101, 104, in regard to a similar situation the Court stated:

The matter of separation of witnesses is left to the sound discretion of the trial court. The court was acting well within this discretion in permitting the prosecutor to retain the investigating police officer to aid him in the prosecution of this case. The fact that this officer was also

a witness who later testified in the case does not render the trial judge's discretion abusive.

Each party has a right to have one person in the courtroom to aid counsel and it is accepted procedure in Indiana to have a police officer remain even though he is also a witness. The trial court did not abuse his discretion in permitting it here.

### III.

Appellant combines his specifications numbered 4 and 5 for argument. He argues that State's Exhibit FF, a plastic bag, and State's Exhibits Y, Z, AA, BB, CC and DD, photographs of persons, were not properly identified and that no chain of custody was established as to these exhibits. In his specification number 9, appellant also claims error in the admission of State's Exhibit X, a flower enclosed in glass, based on a similar claim of lack of establishment of a chain of custody. All of these claims will be discussed in one issue.

Appellant claims that the rule of *Graham v. State*, (1970) 253 Ind. 525, 255 N.E.2d 652 requires that a complete chain of custody be established tracing possession of an original exhibit to the final custodian and that if one link is entirely missing, the exhibit cannot be introduced or made the basis for testimony. He argues that this rule applies to these exhibits and that there were substantial breaks in the chain of custody. He does not contend that they were tampered with in any way. The *Graham* case involved a prosecution for possession and sale of heroin. Justice Hunter stated the rule in *Graham* as follows:

> We believe the rule announced here can be summarized as follows: where as in the case of seized or purchased narcotics, the object offered in evidence has passed out of the possession of the original receiver and into the possession of others, a chain of possession must be established to avoid any claim of substitution, tampering or mistake, and failure to submit such proof may result in the exclusion of the evidence or testimony as to its characteristics. Where such evidence or testimony

is improperly introduced and is prejudicial to the party against whom it is directed, then the judgment of the trial court should be reversed.

Id. at 253 Ind. 533, 255 N.E.2d 656.

In the *Graham* case there was no testimony in the record to explain where the item of evidence was for six days. The Court decided that such a substantial break in the chain of custody was grounds for excluding the evidence. In the present case, State's Exhibits FF, Y, Z, AA, BB, CC and DD were a plastic bag and photographs contained in it. Officer Dan Scroggins identified the photographs at trial as the ones he had taken to the victim for identification of the robber. After the victim had viewed the photographs, Scroggins testified he placed them in an evidence bag which was placed in a box along with other items of evidence and the box was placed in the property room of the Police Department under the custody of Charles Paul. Officer Paul testified that he delivered all the items in his possession to the prosecutor's property room office on September 21.

State's Exhibit X, a glass-enclosed flower, on which a fingerprint of the defendant was found, was admitted into evidence after lengthy testimony by police officers. Officer Dan Scroggins testified that he took the flower as evidence from the counter in the card shop. He identified the exhibit at trial and stated that it was in the same condition as it was the first time he had seen it. Scroggins testified that he and Sergeant Cox packaged Exhibit X and locked it in the detective's office at Precinct I on Seymour Street over the weekend. Officer Stonebreaker verified that the exhibit was confined to the detective's office in the Seymour Street headquarters. Steve Williams, a lab technician for the Anderson Police Department testified that Officers Cox and Scroggins brought Exhibit X to him for processing and that the Exhibit was confined in his laboratory from August 17 to August 29. Williams packaged it to send back to Muncie on August 29. Officer James Winkle testified that he received the package in Anderson on August 29, from

Steve Williams and delivered the package to Officer Scroggins. Officer Charles Paul testified that he received the package on August 29 from Scroggins and Cox and that he placed it in the Police Property Room. He personally removed it from the property room and took it to the prosecutor's office along with other items of evidence.

■ Appellant does not contend that the exhibits involved here were tampered with in any way. The rule in *Graham, supra,* focused on the need to avoid any claim of substitution, tampering or mistake. Nonfungible items do not require a high degree of scrutiny applied to fungible items such as drugs. *Wilson v. State,* (1975) 263 Ind. 469, 333 N.E.2d 755. The exhibits in the present case were all evidence with characteristics capable of eyewitness identification, unlike the fungible narcotics involved in *Graham.* It is a sufficient foundation for the introduction of such items into evidence that a witness identifies the item and it has relevancy to the issues of the case. *Woodard v. State,* (1977) Ind., 366 N.E.2d 1160, *Owens v. State,* (1975) 263 Ind. 487, 333 N.E.2d 745. Each of the items introduced was identified by witnesses and a chain of custody was established for each. There is no error in the admission of these exhibits.

### IV.

■ In appellant's specification No. 6, he challenges the overruling of his Motion to Strike the testimony of Officer Scroggins when he "read the Police Reports to the jury instead of attempting to refresh his memory with them." He claims that when Officer Scroggins used a police report he was testifying as to the police report and not refreshing his memory. Apparently this is a kind of hearsay objection.

The record reveals that Officer Scroggins was handed a supplemental report which was identified as State's Exhibit GG. He testified that it was a report that he had personally prepared and typed on August 15, 1977. On that date Officer Scroggins put together a group of photographs. One was a picture of Clifford Gee and the other

five photographs were chosen for their similarity and likeness to the defendant. That same day the supplementary report was typed, listing the names of the subjects in the selected photographs. At trial Scroggins used the report to compare the names on the photographs of the subjects with the names in his report to answer questions about the names of all the persons depicted in the photographs. He testified that the names were the same on the photographs and on his supplemental report, that he recognized the group of photographs and had kept them all together, and that he could identify Clifford Gee's photograph. He also testified that the group of photographs were shown to the victim, Joan Sipes, and to Bonnie Erby. Appellant's Motion to Strike the testimony of Officer Scroggins was overruled.

The use of this report in testifying more closely resembles a use of past recollection recorded than of memory refreshed. When the requirements to qualify as past recollection recorded are met, the document itself can be received into evidence, or the witness can be permitted to read it to the jury. Generally, the witness must have personal knowledge of an event which he contemporaneously recorded in a written memorandum or adopted, if recorded by another, while he had a clear memory of it. At the time of his testimony he may have completely forgotten the event, recorded but at that time he can vouch for the accuracy of the prior writing. *M. Seidman, The Law of Evidence in Indiana,* pp. 133–34 (1977). In *Grimes v. State,* (1972) 258 Ind. 257, 280 N.E.2d 575, in commenting about the use and admission into evidence of a matchbook cover on which a gasoline station attendant had copied the license number of an automobile used in a robbery, the court stated:

> [If] the information contained thereon were used as a record of past recollection and after verification it became his present evidentiary statement, they may be admitted in evidence in connection with his testimony . . . . .

*Id.* at 258 Ind. 257, 280 N.E.2d 577.

Officer Scroggins was using a report identified as one he personally prepared on the day of the event. He had personal knowl-

edge of what was recorded and vouched for the accuracy of it. There was no error in allowing him to use the report, or in over-ruling defendant's Motion to Strike his testimony.

## V.

Appellant next alleges error in the allowing of State's Exhibits A, B, C, D, E, F, G and H, photographs of the victim, to be shown to the jury. He claims that the pictures were prejudicial in that they were repetitious, cumulative, indecent and had no probative value. We disagree.

The eight photographs depict the victim and her injuries. Six of the photographs show the victim completely dressed with head and hands bandaged, and with various bruises on her upper body. The two photographs alleged to be indecent are Exhibit D, showing the victim's back, and Exhibit F, showing the victim's hip and thigh. Appellant argues that because there was other testimony concerning Mrs. Sipes' physical condition, the photographs were introduced for the sole purpose of prejudicing and inflaming the jury.

Photographic evidence need only be relevant and accurate to be admissible. *Wilson v. State*, (1978) Ind., 374 N.E.2d 45. On review, we would disturb the trial judge's ruling only if he abused his discretion in allowing clearly prejudicial evidence before the jury. The defendant was charged with Inflicting Physical Injury in the Commission of a Robbery. The nature and extent of the victim's injuries were in issue. There is no error in the admission of these photographs.

## VI.

The appellant next claims in specification 11, that the court erred in overruling the defendant's objection to testimony by police officer Paul Cox as to admissions against interest made by the defendant after the Prosecutor failed to produce such statements pursuant to a Discovery Order.

The record shows that the Discovery Order referred to was a Motion to Produce filed by the defendant on August 29, 1977, which asked for several statements, including "any written or recorded statements and any summaries of oral statements made by the accused herein or any statements of others which contain declaration of the accused" and "any declarations against interest made by the defendant." The appellant complains that the State did not produce any statements or notes of statements allegedly made by the defendant but "left the defense to read all of the police reports which were provided and attempt to draw out what the defendant might have said." He also argues that the statement given was obtained by fraud, trickery and deceit because the police represented that the interview was to establish an alibi for the defendant which they did not intend to do. On September 23, 1977, the State filed its Reply to the Motion to Produce and included under documents, a listing of Muncie Police Department Crime Report Number 77–22420 and supplements consisting of 36 pages, a rights waiver signed by Clifford Gee, an oral statement by Clifford Gee, and the prior criminal record of Clifford Gee. The reply further stated that "declarations against interest are contained in the summaries of conversations the defendant had with the police."

Prior to Police Officer Cox's testimony, a hearing was held outside the presence of the jury to determine the admissibility of a statement by Gee to Muncie Police. Defendant's attorney acknowledged that he had received a copy of the statement given on August 17, 1977, which was the one in issue. It was also established that the defendant had had read to him, had read himself, and had signed a waiver prior to the interview on the 17th. After the jury heard the testimony of the circumstances of the interview and the waiver procedure, the signed waiver form was admitted into evidence. At this point, counsel objected on a different basis, to the admission of testimony. His objection was directed to the admission of any testimony involving interrogation or questioning done by the State's officers or Muncie police af-

ter the defendant had been in custody for five days. This issue is discussed fully under issue VII. Sgt. Cox was allowed to testify from his memory of the interview on the 17th and to use his typewritten notes to refresh his recollection. The testimony of officer Cox related Gee's description of his activities on August 12, 1977. This was not a confession of having committed the robbery. Gee continued to deny he committed the robbery throughout the trial and never did confess to having committed the crime.

It is obvious from the record that the State had complied fully with the discovery order and Sergeant Cox's testimony was properly admitted. There is no merit to this claim of alleged error due to failure to comply with discovery procedures.

## VII.

Next Appellant alleges in his specification 12 that the court erred in overruling defendant's objection to testimony of any statements made by the defendant to the police after he had been held in jail for five days on the charge. This objection is directed to the same statement given on August 17, 1977, discussed in Issue VI, *supra*.

The crime in question was committed at the Hallmark Card Shop on Friday, August 12, 1977. Clifford Gee was arrested with a warrant at approximately 10:30 that evening and a Polaroid picture was taken of him. On Monday, August 15, 1977, Officer Hensley mugged and finger printed the defendant. The same day, on Monday, a Polaroid picture taken on the 12th was shown to the victim. An information was filed on August 16, 1977, and defendant was arraigned on August 18, 1977, and found to be indigent. Counsel was appointed for defendant on August 18, 1977.

Appellant does not argue that his arrest was illegal or improper. He simply argues that the statement given on August 17 should not have been admitted into evidence because he had been in jail for five days, citing Ind. Code § 35–5–5–1 et seq.

In *Franklin v. State*, (1977) Ind., 364 N.E.2d 1019, 1022, we discussed the issue of a statement which was given more than 6 hours following the initial arrest. It was concluded that the taking of a statement after the defendant has been in custody over six hours and without the presence of counsel does not render the statement inadmissible under the statutes cited, Ind. Code § 35–5–5–2(1) (Burns 1976) and Ind. Code § 35–5–5–3 (Burns 1976) but is a factor to be considered by the trial judge in determining the issue of voluntariness. The legal standard to be applied in determining whether an accused who has been properly advised of his rights and has signed a waiver, has voluntarily waived his rights is whether, looking at all the circumstances, the confession was free and voluntary and not induced by any violence, threats, promises, or other improper influences. *NaCoff v. State*, (1971) 256 Ind. 97, 267 N.E.2d 165.

Here, the statement given by appellant was described in Issue VI, *supra*. It was offered as an explanation of his actions on August 12, 1977, or as an alibi. It was not a confession of guilt of any offense. A waiver of rights form was read to appellant, appellant read the form himself, acknowledged that he understood it, and signed it prior to the interview. A hearing was held on the admissibility of the statement. In addition, the defendant testified at trial that he was not forced to give this statement and that he gave it willingly. There is no error in the admission of the statement.

## VIII.

Appellant alleges in his error numbered 17 that the court erred in not granting a mistrial because he was denied the right to counsel at a critical stage of the pre-trial investigation. In his argument he claims this right was violated when the prosecution took photographs of the defendant for identification purposes while he was incarcerated before trial without consulting with defense counsel. The photograph to which appellant objected was taken on Friday, August 12th and shown to the victim,

Joan Sipes, on Monday, August 15, 1977, as one in a series of photographs. The information charging Clifford Gee was filed on August 16, 1977. Appellant cites *U. S. v. Wade*, (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 in support of his claim.

The Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender. *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619, *Griffin v. State*, (1976) Ind. App., 357 N.E.2d 917.

Finally, we find no motion for mistrial based on the denial of the right to counsel in the record. There is thus no error presented.

### IX.

■ Appellant's specification 15 is that the court erred in failing to make sufficient inquiry to determine whether or not the defendant was being detained unlawfully when photographs were taken to show to the victim, Joan Sipes, and to Bonnie Erby.

The only objections made at trial concerned the admission of photographs into evidence based on improper chain of custody and improper identification claims. Here, on appeal, appellant has based his argument on different grounds than those presented at trial. When this is done, there is no question before the appellate court for review. *Cox v. State*, (1974) 159 Ind.App. 286, 306 N.E.2d 107. Appellant cannot now complain that the trial court did not inquire about whether defendant was being unlawfully detained when photographs were taken when this matter was not raised at trial.

### X.

■ Appellant next alleged in his specification 19, that the trial court erred in not determining why there was a long delay by the State before defendant's arraignment. Again, defendant did not specifically object to the trial court about the length of time he was detained before arraignment. Any error here has been waived. In addi-

tion, in *Owens v. State*, (1975) Ind., 333 N.E.2d 745, we note there is no Indiana statute or court rule which fixes a specific time within which a defendant must be arraigned. In the absence of such a specific provision an appellant must show that such delay was both unreasonable and prejudicial. The sequence of events of defendant's arrest and subsequent detention was set out in issues VII and VIII above. Since the delay here was not shown to be unreasonable or prejudicial, there is no error shown.

### XI.

■ Appellant alleges in his specification 14 that the court erred in overruling the defendant's Motion for Mistrial based on the misconduct of a juror. Affidavits were filed on October 6, 1977, in which Patsy Gee and Janice Gee stated that on Wednesday, October 5, 1977, during the lunch hour, juror John Searfoss talked on a public telephone in the Delaware County Building and stated to an unknown party that he was a juror on the Clifford Gee trial and also stated, "I know that he's a little liar." Appellant argues that this conduct was in direct contravention of the judge's admonition not to discuss the case with anyone. He argues that this conduct shows prejudice on the part of the juror, therefore he is not a fair and impartial juror, and therefore, the defendant cannot have had a fair trial.

A hearing on the Motion for Mistrial was held on October 6, 1977. Juror John Searfoss, Geoffrey Rivers, attorney for defendant, and Ronald Smith, deputy prosecuting attorney were present. Judge Alva Cox called to Searfoss' attention that he had taken an oath to well and truly try the case and interrogated him as to whether he recalled the admonitions of the court regarding discussing the case. John Searfoss answered in the affirmative. Judge Cox further inquired of this juror if he had made a phone call on Wednesday, October 5, 1977, at lunch hour from the lobby of the Delaware County Building. Searfoss responded that he did make a call. He stated that he did not say he was on the Clifford Gee trial,

but had only said he was a juror. Searfoss denied making the statement, "I know that he is a little liar." The judge determined that the juror did not conduct himself in a manner that would be prejudicial to the defendant and the motion for mistrial was denied.

Guidelines for dealing with possible juror prejudice as it related to prejudicial publicity were set in *Lindsey v. State*, (1973) 260 Ind. 351, 295 N.E.2d 819. In brief, the juror is to be individually interrogated by the court, outside the presence of the other jurors to determine the degree of exposure and the likely effect. After interrogation he is to be individually admonished. After all jurors have been interrogated and admonished, the jury should be assembled and collectively admonished. In *Bruce v. State*, (1978) Ind., 375 N.E.2d 1042, which involved audience discussion overheard by jurors, this Court discussed how the *Lindsey* procedure had been applied to other areas of possible prejudicial influence on jurors, citing *Daniels v. State*, (1976) Ind., 346 N.E.2d 566, 568–69 (juror's wife threatened by the victim's mother).

The conduct of the juror here was making a phone call and saying that he was a juror. This conduct is much less potentially prejudicial than any of the examples above in which serious extraneous influences, such as threats or newspaper accounts were involved. Nevertheless, the trial court did hold a hearing, did interrogate the juror individually, did admonish him and did determine that the juror did not act improperly. This procedure, which has been held to be adequate in circumstances reflecting much greater potential for prejudice than those present here, was complied with. There is no error in the court's overruling of defendant's Motion for Mistrial based on the misconduct of this juror and no showing of prejudice to this defendant.

## XII.

Appellant next alleges that the trial court erred when it failed to rule that the in-court identification of the defendant by Joan Sipes and Bonnie Erby was tainted by their illegal out-of-court identification of the defendant in the photographic display discussed in Issues III, VII, and VIII. Appellant argues that the photographic display was illegal because of an alleged denial of right to counsel discussed in Issue VIII and an alleged lack of chain of custody discussed in Issue III. Therefore, he argues that the in-court identification is tainted.

There is no merit to these contentions. The defendant was identified by both Joan Sipes and Bonnie Erby at trial. Defendant did not object at either time. Error which is not raised by proper objection at trial will not be considered on appeal. *Bell v. State*, (1977) Ind., 366 N.E.2d 1156, *Brown v. State*, (1975) 264 Ind. 40, 338 N.E.2d 498.

## XIII.

Appellant's last argument designated error 13, is that the decision of guilty is contrary to law because it is based on impermissible and illegally seized evidence, impermissible and illegal in-court identifications of defendant, improper testimony from police officers, inflammatory evidence, evidence lacking a chain of custody and the prejudice of a juror, and therefore, that the defendant has been denied a fair trial. Each of these allegations has been discussed separately. No illegally seized evidence was admitted; in-court identification of the defendant was proper. The testimony of police officers and the exhibits were properly admitted at trial. No harm from juror prejudice was shown. There is no merit to this recapitulation of the appellant's previously alleged errors.

Judgment affirmed.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., concurs in result.