Perry Michael **ELLIOTT**, Appellant,

v.

**STATE of Indiana,** Appellee.

No. 683S226.

Supreme Court of Indiana.

July 12, 1984.

Angelo Sabato, Donald Black, Dennis Heling, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Following a jury trial, the appellant was sentenced to thirty-eight (38) years imprisonment for felony murder.

The facts are these. The victim was killed in her home in the Cedar Lake area sometime on the day of August 16, 1979. The crime was not discovered until the next day when neighbors went to investigate. The victim was discovered in her bedroom. She had been bound and gagged. The coroner testified the cause of death was suffocation as a result of the gag. The home had been ransacked and property had been taken from both the home and the person of the victim.

Two and one-half years later, on January 6, 1982, it came to the attention of the Cedar Lake Police that the police in a neighboring jurisdiction were holding the appellant who claimed to have information concerning the homicide. Appellant had been a confidential informant for local police in various drug investigations in the area. He had provided information which had led to the arrest of over a dozen individuals. Appellant had also been a suspect in several other burglaries in the area. In fact, the appellant had given many statements to the police over the prior four months which had implicated himself and others in these burglaries.

On January 6, 1982, appellant gave the police a statement which implicated two men, S.H. and J.C., in the homicide. In this statement he indicated he had no role in the incident. On January 9, 1982, appellant gave the police a second statement implicating himself and S.H. This statement described the events involved in great detail. On January 21, 1982, appellant gave a third statement indicating S.H. was not involved in the crime but rather S.B. was the coconspirator. Appellant also changed the time of day of the crime as well as the method of escape. He did not recant his involvement in the third statement.

■ Appellant first alleges the trial court erred in admitting the January 9 and January 21 statements. He contends the statements did not represent the truth. He offers a number of reasons why he lied in giving the statements. First, he asserts he had established a pattern with the local police whereby he would confess to a crime and the police would release him. He contends that when the next crime came along the police would bring him to the station and threaten him with incarceration on the prior charge if he did not confess to the present crime. He contends these statements were a continuation of that pattern. Next he maintains the police threatened

him with charges which would produce three hundred years of imprisonment if he did not confess to the homicide. Lastly, he contends the police used undue influence on him when they placed him in the jail with some of the prisoners he had helped incarcerate with his past police cooperation.

At a pretrial suppression hearing, concerning the statements, the court heard these explanations as well as the contrasting views of the police who conducted the investigation. The police testified appellant was fully advised of his rights and chose to knowingly and voluntarily waive those rights by giving a statement. No deal was offered to the appellant by police officers or the prosecutor's office. In fact, many of the discussions were held based upon appellant's initiative and desire to be a State's witness in these matters. The trial court denied the Motion to Suppress.

■ In reviewing the sufficiency of evidence on the voluntariness of confession, this court will not reweigh the evidence. *Grassmyer v. State*, (1981) Ind., 429 N.E.2d 248; *Jackson v. State*, (1981) Ind., 426 N.E.2d 685. There is substantial evidence of probative value that appellant voluntarily gave the statements. The trial court did not err in its ruling.

■ Appellant next contends the verdict was manifestly against the weight of the evidence. He claims an absence of any physical evidence, direct or circumstantial, which linked appellant to the crime. A confession is evidence to be weighed along with all other evidence to determine whether the State has met its burden. *Cambron v. State*, (1975) 262 Ind. 660, 322 N.E.2d 712. This court does not reweigh the evidence nor judge the credibility of witnesses. *Staton v. State*, (1981) Ind., 428 N.E.2d 1203; *Rowan v. State*, (1982) Ind., 431 N.E.2d 805. In the case at bar the jury had an opportunity to hear the extrajudicial statements and to hear appellant's explanation of his motivation in making the statements. We find substantial evidence of probative value was presented to support the findings of the trial court.

In a related issue appellant contends the trial court erred when it denied his Motion For a Directed Verdict. In light of our holding above, the trial court did not err in its denial.

In challenging the credibility of his extrajudicial statements, it was necessary for appellant to show that he had previously given the police self-incriminating statements concerning unrelated crimes. The purpose was to show his reliance on the past police practices of releasing him after he had given such statements. He attempted to show the statements given consisted of fabrications and answers "planted" by the police. He maintains the police would drop hints or show him pictures of the crime scene. The basic thrust of the defense was that in his mind giving a statement equated to gaining his freedom.

In the course of the presentation of this type of defense, the prosecuting attorney, in cross-examination, brought out various other crimes with which the appellant may or may not have been involved. Defense counsel objected to this type of conduct on the part of the prosecutor and moved for a mistrial. Appellant now claims the court erred in denying his Motion for Mistrial.

■ The denial of a Motion for Mistrial rests largely within the discretion of the trial court. This Court will reverse only when it is shown that the appellant was placed in a position of grave peril to which he should not have been subjected. *Morgan v. State*, (1981) Ind., 419 N.E.2d 964. When the jury is admonished by the trial judge to disregard what has occurred at trial, or if other reasonable curative measures are taken, the court's refusal to grant a mistrial is not reversible error. *Tinnin v. State*, (1981) Ind., 416 N.E.2d 116; *Smith v. State*, (1978) 270 Ind. 1, 382 N.E.2d 937.

■ In the case at bar the trial court faced a considerable challenge in attempting to limit the parties to the issues of the homicide. The statements of the prosecutor surely placed before the jury issues unrelated to appellant's guilt in the crime

charged. However, the issues were related to appellant's veracity and his past conduct with the police. Both of these issues were raised by the appellant in his direct examination. Appellant's defense was at least partially responsible for the jury's exposure to his role in the unrelated crimes. Based upon this, we cannot find he was placed in a position of grave peril to which he should not have been subjected. Therefore, we hold the trial court did not err in denying the Motion for Mistrial.

Lastly, appellant argues he was denied effective assistance of counsel. He points to three alleged errors by counsel during the course of the trial. First, that counsel failed to make objections to all of the "improper" statements of the prosecutor during appellant's cross-examination. Secondly, counsel failed to propose jury instructions. Thirdly, counsel failed to introduce into evidence appellant's exculpatory statement given to the police on January 6, 1982, prior to the incriminating statements of January 9 and 21, 1982.

 In reviewing competency of counsel, there is a presumption that counsel is competent and that strong and convincing evidence is required to rebut the presumption. *Howell v. State*, (1983) Ind., 453 N.E.2d 241; *Lindley v. State*, (1981) Ind., 426 N.E.2d 398; *Rinard v. State*, (1979) 271 Ind. 588, 394 N.E.2d 160. Incompetency of counsel revolves around the particular facts of each case. This Court will not speculate as to what may have been the most advantageous strategy in a particular case. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffective counsel. *Hollon v. State*, (1980) 272 Ind. 439, 398 N.E.2d 1273.

Recently the United States Supreme Court decided *Strickland v. Washington*, (1984) — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674. There the Court first outlined the general guiding premise for appellate review of effectiveness of counsel.

"The Court has not elaborated on the meaning of the constitutional requirement of effective assistance in the latter class of cases—that is, those presenting claims of 'actual ineffectiveness.' In giving meaning to the requirement, however, we must take its purpose—to ensure a fair trial—as the guide. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* 104 S.Ct. at 2064.

The Court outlined a two part standard of review.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 2064.

The Court indicated the appellate court should look to determine whether the acts of alleged misconduct were outside the wide range of professionally competent counsel when viewed in light of all circumstances.

The Court further stated:

"[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. The government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in an infinite variety and are

as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense." *Id.* at 2067.

As to the presumption of competency of trial counsel, the Court stated:

"Judicial scrutiny of counsel's performance must be highly diferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac*, 456 U.S. 107, 133–134 [102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 2065.

In reviewing Indiana's cases on this subject and comparing our previous decisions with the *Strickland* case, it would appear Indiana has been following the guidelines laid down in *Strickland*. We reaffirm our past decisions in this regard and point out that the guidelines set forth in *Strickland* are to be followed henceforth in the citing of the question of competency of counsel.

 In the case at bar, we find that trial counsel meets the guidelines set forth and that his conduct was competent.

The trial court is in all things affirmed.

DeBRULER, PRENTICE and PIVARNIK, JJ., concur.

HUNTER, J., not participating.