**Johnny L. MAY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 1084S383.**

Supreme Court of Indiana.

Dec. 31, 1986.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Johnny L. May was convicted of five counts of robbery, a class B felony, at the conclusion of a jury trial in the LaPorte Circuit Court. He was sentenced to five concurrent terms of sixteen years. The following issues are raised on direct appeal:

1. sentencing;
2. denial of Appellant's Motion to Dismiss;
3. denial of Appellant's Motion to Suppress;
4. cross-examination of Appellant;
5. sufficiency of the evidence;
6. alleged prosecutorial misconduct; and
7. alleged ineffective assistance of counsel.

On September 25, 1981, Julia Collard observed an orange car with Illinois license plates back into the parking lot of Dago John's Tavern. Three black males exited the car, entered the tavern, and asked to speak to the owner about a job. They left upon being told the owner was not present. About an hour later, three armed black males wearing masks entered the tavern through the front and rear doors. The owner was forced to turn over nearly $3,000, and four patrons also were forced to relinquish their wallets. The owner, employees, and patrons were led into a washroom and told to lie down. After about ten to fifteen minutes, when they saw the robbers had gone, the victims came out. Because the telephone wires had been cut, two of the victims went to call the police.

Officer Eddie Hawk, of the LaPorte County Sheriff's Department, was on patrol when he received a dispatch over his radio concerning the robbery. The dispatch said the suspects possibly were driving a 1968 white Oldsmobile. Hawk passed by a cream-over-orange Chevrolet with Illinois license plates, being driven by a black male wearing a hat, but did not follow the car because it did not fit the description given in the dispatch. About five minutes later, a second dispatch was sent out, describing the car as cream-over-orange, with Illinois license plates. Hawk caught up with the Chevrolet and followed it to a dead-end street, blocking the car's exit. He ordered Appellant, the driver, out of the car. Two other black males were lying on the floor of the front and back seats, and Hawk also observed a revolver on the front seat. The men were arrested and the car was impounded and subsequently searched

pursuant to a search warrant. The search revealed over $2,000.00 in cash, several weapons, wallets belonging to patrons of the tavern, and several personal belongings, including clothing, matching the descriptions of what the robbers wore.

I

Appellant was sentenced to five concurrent terms of sixteen years. The court stated its reasons for finding aggravating circumstances to enhance the terms by six years to be:

"1. That there was a real threat of harm to the victims;
2. That there were five separate robberies committed;
3. That defendant used care in planning the commission of these offenses."

Appellant maintains this was an abuse of discretion because the real threat of harm was due solely to the use of weapons, which was inherent in elevating the charge from class C robbery to class B; there was only one transaction and one criminal intent; and there was no evidence of planning. He further argues the court should have mitigated his sentence due to his lack of convictions.

■ Ind.Code § 35–38–1–7 permits the trial court to aggravate a sentence. This may be due to a number of reasons listed in the statute, although the court is not limited by these considerations. We will not revise a sentence authorized by statute unless such sentence is manifestly unreasonable in light of the nature of the offense and character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for whom such sentence was imposed. *Mellott v. State* (1986), Ind., 496 N.E.2d 396, 398.

■ Although Appellant maintains there is no evidence to support the court's finding that Appellant used care in planning the robberies, we disagree. Testimony showed the robbery occurred on the one day of the week the owner of the tavern had a substantial amount of cash on hand to cash payroll checks of customers. Further testimony showed Appellant and two others entered the tavern once, purportedly to speak to the owner about employment, and again to rob the tavern about an hour later. When the trio arrived to rob the tavern, they were armed and disguised,

**100**

entered from and covered both entrances, herded all of the victims into one location, cut all telephone wires, and made their escape. Clearly this evidence is sufficient to sustain a finding that the offense was carefully planned as opposed to being a spur of the moment occurrence. This sole aggravating factor is sufficient to sustain the sentence. However, Appellant has failed to show error in the court's utilization of multiple robberies as an aggravator. His only argument is that despite there being five victims and five robberies, they all arose from one transaction and one criminal intent. This contention in no way negates the trial court's aggravating the sentence due to five separate robberies of five separate victims. For these reasons we hold the trial court was within its discretion in aggravating the sentences.

■ Appellant further argues the trial court erred in considering prior arrests which did not result in convictions and in failing to consider his lack of convictions as a mitigating factor. First, it is not clear that Appellant's history of criminal activity was used by the court to aggravate the sentence; it is not listed in the court's rationale. Second, Ind.Code § 35-38-1-7 contemplates consideration of a defendant's "history of criminal activity" and does not require such to be reduced to a conviction. *Jackson v. State* (1981), Ind., 426 N.E.2d 685, 689. Finally, the decision to consider a person's lack of criminal convictions as a mitigating factor is a discretionary decision on the part of a trial court. Ind.Code § 35-38-1-7 (Burns 1985).

## II

Appellant next contends the trial court erred in denying his Motion to Dismiss based upon failure to bring him before a magistrate in a speedy fashion and to provide counsel at the earliest time after the case became adversarial.

Appellant was arrested on Friday, September 25, 1981, and probable cause for a search warrant was established. On Monday, September 28, a hearing was held to establish probable cause, and informations were filed that day. Also, the court set bond and held over Appellant due to lack of jurisdiction. Although Appellant was in custody, he was not present at the hearing. The arrest warrants were served on Appellant the next day, Tuesday, September 29. On Wednesday, September 30, arraignment was set for October 5. On Monday, Octo-

ber 5, Appellant was present at the hearing, entered his plea, and was appointed counsel. On November 2, a preliminary hearing was set for November 9.

The following statutes were in effect when Appellant was arrested:

Ind.Code § 35-33-7-1 (Burns Supp. 1981): A person arrested without a warrant for a crime shall be taken promptly before a judicial officer....

Ind.Code § 35-33-7-2 (Burns Supp. 1981). At or before the initial hearing of a person arrested without a warrant for a crime, the facts upon which the arrest was made shall be submitted to the judicial officer, *ex parte*, in a probable cause affidavit [or] facts may be submitted orally under oath to the judicial officer.... If the judicial officer determines that there is probable cause to believe that any crime was committed and that the arrested person committed it, the judicial officer shall order that the arrested person be held to answer in the proper court....

Ind.Code § 35-33-7-3 (Burns Supp. 1981): When a person is arrested for a crime before a formal charge has been filed, an information or indictment shall be filed or be prepared to be filed at or before the initial hearing.... Before recessing the initial hearing and after the *ex parte* probable cause determination has been made, the court shall inform the defendant of his rights specified in ... this chapter.

Appellant argues that under Ind.Code § 35-33-7-3, he should have been informed of the charges against him on September 28. He maintains the trial court's failure to do so precluded him from obtaining counsel and securing a witness who subsequently left the State and became unavailable.

■ The overriding concern in our statutes cited above, is that a defendant not be unduly detained or held in custody without a showing of probable cause. Here, Appellant was arrested on a Friday without a warrant. Probable cause was found to exist the following Monday, and informations were filed, Appellant was bound over, and bond was set. There was no undue delay. Although Appellant was not present at the probable cause hearing, such is contemplated in Ind.Code § 35-33-7-2 (Burns Supp.1981). *See also Gerstein v. Pugh* (1975), 420 U.S. 103, 120, 95 S.Ct. 854, 866, 43 L.Ed.2d 54, 69. On Tuesday, Appellant

was served his arrest warrants, and on Wednesday, arraignment was set for the following Monday. At the arraignment, one week after probable cause was determined, Appellant was present, entered his plea, and was appointed counsel. Appellant has failed to show that this procedure in any way deviated from the statutory requirements set forth above.

### III

Appellant alleges the trial court erred in denying his Motion to Suppress and in admitting into evidence several items from the interior of the car he was driving when he was arrested. He contends the testifying police officer lacked sufficient personal knowledge.

The search warrant was issued upon the testimony of Officer Greg Arndt, detective sergeant for the LaPorte City Police Department, who was assigned to investigate the robberies. He testified the original police dispatch described three black males one wearing a hat, in a white Oldsmobile, but within minutes a second dispatch was broadcast based on evidence gathered at the scene that the car was a white-over-orange Chevrolet with Illinois license plates. Such a car, driven by a black male wearing a hat, had just passed Officer Ed Hawk minutes before, moving westerly, away from LaPorte at a distance of approximately two miles from the scene of the robbery. Arndt testified the evidence at the scene was gathered by Chief Larry Miller and Captain Larry Williams, who had spoken with the robbery victims and with eyewitnesses who own a business across the street from the tavern. Officer Hawk followed the car until he blocked its exit from a dead-end road. He ordered the driver, a black male wearing a hat, out of the car. Further investigation revealed two other black males hiding on the front and rear floors of the car. Upon arriving at the scene, Arndt, himself, observed a silver/chrome handgun lying on the front seat of the car. The gun matched a victim's description of one of the weapons used at the robbery. At the time of the hearing, a lineup was being conducted with the three suspects, one of whom was using false identification information.

In *Illinois v. Gates* (1983), 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 544, *reh. denied* (1983), 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453, the United States Supreme Court provided that the probable cause standard must be a "practical, nontechnical conception." They further held that as long as the magistrate had a "substantial basis" for concluding that a search would uncover evidence of a crime, the Fourth Amendment requirements would be met. *Id.* 462 U.S. at 236–237, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. *United States v. Harris* (1971), 403 U.S. 573, 577–583, 91 S.Ct. 2075, 2079–2082, 29 L.Ed.2d 723, 730–73; *Jones v. United States* (1960), 362 U.S. 257–271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 708. The Court then abandoned its two-pronged test established in previous cases, in its place "reaffirm[ing] the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations. [citations omitted.]" *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

■ Applying that standard to Officer Arndt's testimony, the issuing magistrate had a substantial basis for concluding a search of the Chevrolet would uncover evidence of the robberies.

### IV

Appellant maintains the trial court erred in failing to allow his counsel to rehabilitate him after the State's cross-examination.

During cross-examination of Defense Witness Walsh Lamar, Lamar testified he had been in prison until approximately four months prior to the robberies. During cross-examination of Appellant, Appellant testified he had seen Lamar in Gary, Indiana, sometime between eight and twelve months prior to the robberies. On redirect-examination, the following dialogue occurred:

Q: Now, its my understanding, you were present, uh, are you sure that it was Lamar, it was my understanding, in his direct testimony that he was in prison about four (4) months prior to his being picked up?

MR. BAUGHER: Judge, I'm going to object to this line of questioning. He is leading his witness. He is cross-examining his own witness. It is very inappropriate.

COURT: Sustained.

MR. SMITH: Judge, this is recross; he brought, uh, this was on. . . .

COURT: It's your witness and the form of the question is improper. The objection is sustained.

Q: Are you sure that you saw Johnny May, I mean, Lamar, eight, nine months prior to September 25th?

A: September 25th, uh . . .

MR. BAUGHER: Judge, I'm going to make the same objection. He's cross-examining his own witness.

COURT: Sustained.

MR. SMITH: Judge I think that I have the right to clear up that . . .

COURT: It's your witness and your stuck with his answer.

▆▆▆ We fail to see that the trial court erred in its ruling in this matter. The scope and extent of redirect-examination is a matter within a trial court's discretion and will not be disturbed absent a showing of abuse of that discretion. *Dooley v. State* (1981), Ind., 428 N.E.2d 1, 6. The scope of redirect-examination is to be directed to answering any new matters presented during cross-examination. *Woodford v. State* (1980), 273 Ind. 487, 490, 405 N.E.2d 522, 524. A party may be permitted to bring out on redirect-examination some matter which is relevant to his case or defense and which, through oversight, he has failed to elicit on direct. Here, Appellant merely attempted to re-ask, in a leading manner, the same questions that were previously answered on direct-examination. Appellant already had made his statements in regard to those questions, and Witness Lamar had given contradictory testimony. Resolution of the fact based on the credibility of Appellant and Witness Lamar was a determination to be made by the jury. *Hill v. State* (1979), 271 Ind. 549, 553, 394 N.E.2d 132, 135. The manner in which the testimony was offered justified the trial court's refusing to admit it.

### V

Appellant contends there was insufficient evidence to sustain his conviction, but bases this contention on the ground that the identification testimony of witness Brenda Smith was incredible and unworthy of belief. This presents a question of credibility of a witness which is to be determined by the jury, so long as there is probative evidence from which the jury could reasonably infer guilt. *Harris v. State* (1985), Ind., 480 N.E.2d 932, 937.

▆▆▆ Brenda Smith testified that the robber wore a mask but that she was close to him and was able to observe his eyes, along with his size, build, and color. She was most impressed with his eyes, and said that she was able to identify him from that characteristic. She was extensively cross-examined on the subject, and stated her observations of Appellant convinced her he was one of the robbers. The credibility of her testimony affected the weight of that evidence to be given by the trier of fact, and not its admissibility. Her testimony was not so incredible or unbelievable as to make it inadmissible. But cf. *Lottie v. State* (1974), 262 Ind. 124, 311 N.E.2d 800. Furthermore, there was much other evidence that implicated Appellant in these crimes, including the fact that police apprehended Appellant and two others very shortly after the robberies in a vehicle described as being at the scene and in which weapons and property taken from the victims was found.

### VI

Appellant claims the trial court allowed the prosecutor to argue in an improper manner during final argument. The only objection Appellant made to that argument, however, was to a remark by the prosecutor that the Appellant was heading to Gary, when in fact, the evidence was Appellant was heading to Chicago. Appellant objected and the court sustained the objection.

▆▆▆ The State's contention is well taken that it can hardly be said the trial court permitted the prosecuting attorney to argue in an improper manner, when the only objection made by Appellant was sustained. There was no motion by Appellant to admonish the jury, nor was there any motion for mistrial. *Lambert v. State* (1983), Ind., 448 N.E.2d 288, 291. Furthermore, we fail to see how this misstatement, which appeared to be inadvertent, placed Appellant in a position of grave peril to which he should not have been subjected. *Burris v. State* (1984), Ind., 465 N.E.2d 171, 187, *cert. denied* (1985), 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809. Appellant alleges error in other prosecutorial comments, but failed to object to them at trial. In his Motion to Correct Error, Appellant made only general reference to improper comments of the prosecutor objected to at trial. These comments are not subject to review because of waiver. *Salahuddin v. State* (1986), Ind., 492 N.E.2d 292, 296.

### VII

Finally, Appellant contends he was denied effective assistance of counsel due to

his attorney's failure to adequately prepare and present his case. He alleges error in six instances: 1) filing the Motion to Dismiss; 2) failure to seek a change of venue; 3) ineffective cross examination of Brenda Smith; 4) failure to challenge the State's description of Westville Work Release Center as a prison; 5) failure to object to questioning of Appellant on cross examination or to rehabilitate him on redirect examination; and 6) failure to produce certain evidence at the sentencing hearing.

 Our standard of review where ineffective assistance of counsel is alleged is that Appellant must show the alleged acts or omissions by Counsel fell outside the wide range of competent, professional assistance. There is a strong presumption that Counsel rendered adequate legal assistance. He must show also that Counsel's errors had an adverse effect upon the judgment. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–693, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 96, *cert. denied* (1986), —— U.S. ——, 106 S.Ct. 1241, 89 L.Ed.2d 349; *Elliott v. State* (1984), Ind., 465 N.E.2d 707, 710. Both poor performance and prejudice must be shown. *Id.*

 Appellant sought to have Trial Counsel file a motion to dismiss based on Ind.Code § 35–33–7–1 *et seq.* We addressed the merits of this in § II, *supra,* and found no grounds existed for such a motion. Appellant's contention that the manner in which this motion was filed constituted ineffective assistance of counsel is therefore without merit.

 Appellant further charges ineffective assistance of counsel due to Counsel's failure to challenge the racial composition of the jury. Appellant argues counsel should have attempted to get more jurors from Michigan City, where the minority population is greater than in LaPorte. At the hearing on the Motion to Correct Errors, Defense Counsel testified that he questioned the jurors as to racial bias and found no reason to challenge them. Appellant simply states Counsel could have found a more favorably composed jury without stating any support for this contention, or for his allegation that this jury was unfairly composed.

 Appellant contends his counsel's cross-examination of Brenda Smith was inadequate. The determination of when a certain amount of cross-examination is sufficient is a tactical decision to be made by the attorney. *See Harrison v. State* (1986), Ind., 496 N.E.2d 49, 53. A review of Defense Counsel's cross-examination of Smith shows he published her deposition and repeatedly used it to impeach her trial testimony. On two separate occasions he questioned her thoroughly regarding the shape and color of the robber's eyes, and he used this same tactic with her description of the gun used. There is no showing of insufficiency.

 State's Witness Harry Berry testified that one P.J. Lane was assigned to the Westville Work Release Center at the time of the robberies. Appellant sought to show it was Lane who committed the crimes. During closing argument, the Prosecuting Attorney described the Center as a "prison." Appellant maintains his counsel erred in not objecting to the description. At the hearing on the Motion to Correct Errors, Counsel testified a juror told him they had trouble believing a person would sneak in and out to commit a crime. Whether or not to interject objections is a tactical decision which will not suffice to show ineffective assistance. Furthermore, even if, arguably, objection would have been advisable, this one isolated instance of error would not be sufficient to find Appellant was denied competent professional assistance in light of the entire trial.

 Appellant contends his counsel erred in not objecting to questions posed to Appellant regarding when he had last seen Walsh Lamar, and in failing to adequately rehabilitate Appellant on redirect-examination. His allegation that the line of questioning was meant to violate a motion *in limine* is meritless speculation. Reading the line of questioning shows Appellant's answer, that he saw Lamar in Gary eight to twelve months prior to the crime, was unforeseeable and put into evidence before an objection could be lodged. The record further shows that Counsel made a determined attempt to rehabilitate Appellant on redirect examination. It was Appellant's answer that created the problem and not Counsel's shortcoming.

Finally, Appellant alleges ineffective assistance of counsel in that Counsel failed to produce letters and testimony on his behalf to mitigate Appellant's sentencing. Appellant has failed to produce evidence of the contents of the letters or the testimony, and therefore has waived the issue since this Court is left with nothing to review.

The trial court is affirmed.

GIVAN, C.J., concurs.

SHEPARD, J., concurs in result with opinion in which DeBRULER, J., concurs.

DICKSON, J., concurs in result without separate opinion.

SHEPARD, Justice, concurring in result.

I cannot agree that an arrestee's first appearance before a judge more than a week after his arrest and the appointment of counsel six weeks after his arrest afford substantial compliance with the Indiana Code.

The statutes in effect at the time of May's arrest are noted by Justice Pivarnik. A person arrested without a warrant must be "taken promptly before a judicial officer" for his initial hearing. Ind. Code § 35–33–7–1. At this hearing, the court must inform the accused of the nature of the charges against him, the amount and conditions of bail, his right to a speedy trial, the privilege against self-incrimination, and that a preliminary plea of not guilty is being entered for him. Ind. Code § 35–33–7–5. Before recessing the initial hearing, the court must inform a defendant of his right to retained or appointed counsel. Ind. Code § 35–33–7–3(c). If the person is indigent, the judicial officer must assign counsel. Ind. Code § 35–33–7–6.

In the case at bar, the judge apparently followed the predecessor statutes which provided separate hearings for arraignment and preliminary charge. Ind. Code §§ 35–4.1–1–1; 35–4–1–1; 35–1–8–1 (repealed by 1981 Ind. Acts P.L. 298, § 9(a)). Johnny May was arrested on September 25, 1981. Three calendar days later, an *ex parte* proceeding was held by the county court to determine probable cause for his arrest. Bond was set, and the defendant was ordered to "be held to answer for the charges." May was bound over to circuit court because the county court did not have jurisdiction over the offenses. The next day, appellant was served with an arrest warrant at the county jail. On September 30th, the circuit court scheduled an arraignment for October 5th, which is the first time May appeared before a judge. At this arraignment, May appeared *pro se.* Appellant was informed that his attorney must enter an appearance within twenty days, a plea of not guilty was entered on his behalf, the trial date was scheduled, discovery procedures were delineated, and he was remanded to the custody of the sheriff. On November 2nd, a preliminary hearing for the appearance of defense counsel was scheduled for seven calendar days later. At the preliminary hearing, May moved for the appointment of counsel and the court appointed counsel, who entered his appearance that same day. At the hearing on the motion to correct errors, May testified that prior to the appointment on November 9th he was represented by counsel only at the line-up held after his arrest.

May claims that the delay in bringing him before a magistrate prolonged the appointment of counsel and was prejudicial because it impacted his ability to preserve evidence and secure a witness. He maintains that during the week of his arrest he could have subpoenaed a witness in South Bend, Indiana, who subsequently moved to Colorado, address unknown.

The warrantless arrestee must be "taken promptly before a judicial officer" for an initial hearing.[1] The statute does not state the period of time which can elapse between the arrest and the initial hearing for a warrantless arrestee who remains in jail.[2] Several purposes which attach to the requirement of a prompt initial hearing serve as guidelines for a proper time frame: to

---

1. "Prompt," in the context of a "prompt judicial hearing" for an administrative suspension of a driver's license, "denotes readiness without delay or unreasonable hesitation." *Ruge v. Kovach* (1984), Ind., 467 N.E.2d 673, 679.

2. The statute does require an initial hearing, for a warrantless arrestee who has been released on bail or an arrestee under warrant released according to the warrant, to be held within twenty calendar days or twenty days, respectively, of the arrest. Ind. Code §§ 35–33–7–1; 35–33–7–4. The released person is thus able to assist in the preparation of a defense and the accumulation of evidence. Presumably, an initial hearing should be held earlier when the person remains in jail.

advise the arrestee of the charges against him and of his constitutional rights, to provide an arrestee with an attorney if he is without funds to hire one, and to determine whether there is sufficient evidence that the crime charged has been committed and that the accused committed it. *Nacoff v. State* (1971), 256 Ind. 97, 267 N.E.2d 165. One reason for informing the accused of the crime charged is to enable the accused to prepare a defense. *McGee v. State* (1986), Ind., 495 N.E.2d 537.

These purposes are not achieved when a warrantless arrestee remains in jail and does not appear before a judge until one week after his arrest. That such a delay defeats these purposes is particularly apparent when counsel is not appointed until six weeks after the arrest.

Preparation of a defense may have been impeded in this case. However, appellant has the burden to show that the delay between his arrest and the initial hearing was both prejudicial and unreasonable. *Cf., Gee v. State* (1979), 271 Ind. 28, 389 N.E.2d 303; *Owens v. State* (1975), 263 Ind. 487, 333 N.E.2d 745. At the hearing on the motion to dismiss, May testified that within the week of his arrest he could have subpoenaed a witness from Indiana, but that this witness had subsequently moved to another state. He did not make an adequate offer of proof concerning the witness' testimony and how it would have assisted his defense. Accordingly, I concur in the decision to affirm the conviction.

DeBRULER and DICKSON, JJ., concur.