Ricky F. KEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 52A02–9412–CR–777.

Court of Appeals of Indiana.

June 22, 1995.

Jeffrey K. Sinkovics, Roberts Law Firm, Peru, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Ricky Key appeals from his convictions for Operating a Vehicle While Intoxicated, a Class A misdemeanor, and Operating a Vehicle With a Blood Alcohol Content of 0.10% or Greater, a Class C misdemeanor, following a bench trial. The relevant facts show that on May 28, 1994, Officer Timothy Miller administered a breath test to Key using an Intoxilyzer 5000 machine. The results of the test revealed that Key had a blood alcohol content of 0.13%. Prior to and during his trial, Key moved to suppress the results of his breath test. The trial court denied Key's motions and admitted the results into evidence. Key was subsequently found guilty of both alcohol-related offenses. He claims that because the Department of Toxicology had not promulgated standards for the selection of breath test equipment, the trial court erred when it denied his motions to suppress the breath test evidence.

We affirm.

### DISCUSSION AND DECISION

We are asked to decide whether the results of a breath test are inadmissible due to the alleged failure of the Department of Toxicology to adopt standards for the selection of breath test equipment as required by

Indiana Code § 9–30–6–5.[1] That statute provides in pertinent part:

(a) The director of the department of toxicology of the Indiana University school of medicine shall adopt rules under IC 4–22–2 concerning the following:

\* \* \* \* \* \*

(2) Standards and regulations for the:

(A) *Selection;* and

(B) Certification;

*of breath test equipment* and chemicals.

(3) The certification of the proper technique for administering a breath test.

\* \* \* \* \* \*

(c) Certified copies of certificates issued in accordance with rules adopted under subsection (a)....

\* \* \* \* \* \*

(2) Constitute prima facie evidence that the equipment or chemical:

(A) was inspected and approved by the department of toxicology on the date specified on the certificate copy....

\* \* \* \* \* \*

(d) Results of chemical tests that involve an analysis of a person's breath *are not admissible* in a proceeding ... if:

(1) The test operator;

(2) The *test equipment;*

(3) The chemicals used in the test, if any; or

(4) The techniques used in the test;

*have not been approved in accordance with the rules adopted under subsection (a).*

IND.CODE § 9–30–6–5 (emphases added).

■ Key argues that the Department of Toxicology had not promulgated specific standards for the selection of breath test equipment at the time his test was administered and, thus, that the results of his breath test were inadmissible. We cannot agree.

The Indiana Administrative Code sets forth performance requirements for breath test equipment. *See* IND.ADMIN.CODE tit. 260, r. 1.1–2–1. First, the equipment must use a known ethanol-water or ethanol gas solution to simulate an ethanol-breath solution. 260 IAC 1.1–2–1(e)(1). Next, the breath test equipment must produce results that shall not deviate more than minus 8% from the known alcohol content of the ethanol-water or ethanol-gas test solution. 260 IAC 1.1–2–1(e)(2). Further, for the purpose of inspecting a machine, the equipment must be capable of producing a result to the third decimal place. 260 IAC 1.1–2–1(e)(3).

To further ensure the reliability of breath test results, the Department has established the appropriate techniques for administering a test using various models of breath test equipment. The rules promulgated by the Department specifically provide the proper method for using the Intoxilyzer 5000 machine and other models. *See* IND.ADMIN.CODE tit. 260, r. 1.1–4–4.

Selection criteria are inherent in the various rules pertaining to breath test equipment. In order to be selected for use and to be properly certified, a breath test machine must be capable of performing tests and yielding accurate results in the manner described above. Further, when the Department adopts rules regarding the proper technique for administering a breath test using a particular model of breath test equipment, it necessarily has selected that model as reliable to analyze breath samples within acceptable scientific standards for accuracy.

It is of no consequence that these rules were not specifically designated as "selection" standards. There is no requirement in Indiana Code § 9–30–6–5(a)(2) that the Department list standards for the selection of breath test equipment separately from the standards pertaining to certification, inspection and operation of the same equipment. We conclude that the administrative rules in effect at the time of Key's arrest were sufficient to satisfy the mandate of Indiana Code

1. This issue was recently addressed by another panel of this court in *Storrjohann v. State* (1995), Ind.App., 651 N.E.2d 294. However, we consider this to be a case of first impression because in *Storrjohann* two judges concurred only in the result and there was no majority opinion. The opinion of a single judge is not an opinion of the Court of Appeals.

§ 9–30–6–5 that the Department of Toxicology adopt rules concerning the selection of breath test equipment.

■ Breath test results are deemed inadmissible only if the machine used has not been approved by the department. *Mullins v. State* (1995), Ind., 646 N.E.2d 40, 49 (construing Section 9–30–6–5(d)). The selection of breath test equipment is inherent in its subsequent approval. Here, Key does not contend that the Intoxilyzer 5000 had not been approved but that any approval was invalid due to an absence of selection standards. We have determined that at the time of Key's arrest the Department had promulgated rules containing selection standards in accordance with Indiana Code § 9–30–6–5. Thus, the approval of the Intoxilyzer 5000 was proper, and Key has not established a basis for suppression of his breath test results.

■ In his reply brief, Key directs us to recently enacted rule 1.1–5–1 of Title 260, which is entitled "Selection Criteria." 18 Ind.Reg. 11 (1994) (adopted August 30, 1994 and effective 30 days later). Key argues that the Department would not have enacted this new rule if existing regulations covered the selection of breath test equipment. Again, we cannot agree.

The new rule requires that to be selected under Indiana Code § 9–30–6–5, a breath test instrument must meet certain minimum criteria.[2] However, we find that the new rule and the previously adopted rule 1.1–2–1(e) are essentially redundant insofar as selection criteria are concerned. For example, rule 1.1–5–1(a)(1) states that to be selected a machine must yield results in units of percent by weight of alcohol in blood. Our supreme court has likewise interpreted rule 1.1–2–1(e)(2) to require that a machine be

capable of measuring blood alcohol content as a percentage of alcohol by weight in the blood. *See Baran v. State* (1994), Ind., 639 N.E.2d 642, 647. Thus, while the enactment of a separate rule specifically called "Selection Criteria" is a useful clarification, it was not required by Indiana Code § 9–30–6–5. The new rule does not affect our conclusion that sufficient standards governing selection of breath test equipment existed at the time of Key's arrest.

■ Key merely invites this court to elevate form over substance. We emphasize that the essential purpose of the statutory mandate that the Department of Toxicology adopt standards and regulations is "to ensure the reliability and accuracy of the results of the test." *Crouch v. State,* (1994), Ind.App., 638 N.E.2d 861, 864. There is no evidence to suggest that Key's breath test results were in any way unreliable or inaccurate.

We conclude that any breath test machine which has been inspected, approved, and certified in accordance with the strict performance and accuracy requirements set forth by the Department has also been "selected" in accordance with those same standards. Thus, we hold that sufficient standards for the selection of breath test equipment were in effect at the time of Key's arrest to ensure the reliability of his breath test results. The trial court did not err when it denied Key's motion to suppress and admitted into evidence the results of his breath test.

Affirmed.

BAKER and RILEY, JJ., concur.

---

**2.** Indiana Administrative Code tit. 260, r. 1.1–5–1(a) provides in pertinent part:

(1) The instrument must analyze breath samples and the numerical blood concentration value it reports shall be in units of percent by weight (weight/volume) of alcohol in blood.
(2) The instrument must be capable of calibration for purpose of certification with a known alcohol standard in accord with 260 IAC 1.1–2–1(e) and maintain this calibration during routine breath alcohol testing.

(3) The instrument must be able to analyze a known alcohol reference sample within limits specified by 260 IAC 1.1–2–1(e) separate from calibration for certification.
(4) The instrument must be equipped with sufficient features to prevent unauthorized alteration, tampering, or manipulation in order to safeguard the breath sampling process and blood alcohol concentration analysis.