**STATE of Indiana, Appellant**
**(Defendant Below),**

v.

**Mark A. HAYES, Appellee**
**(Plaintiff Below).**

No. 55A04–9504–CR–148.

Court of Appeals of Indiana.

Oct. 6, 1995.

Transfer Denied Dec. 13, 1995.

Pamela Carter, Attorney General of Indiana, Preston W. Black, Deputy Attorney General, Indianapolis, for appellant.

Stephen A. Oliver, Boren & Oliver, Martinsville, for appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

The State of Indiana brings this interlocutory appeal from the trial court's grant of defendant Mark Hayes' motion to suppress.

We reverse.

*ISSUE*

Whether the trial court erred in suppressing Hayes' breath-test results.

*FACTS*

On June 25, 1994, Mooresville police officer James Bolin administered a breath test to Hayes using a certified Intoxilyzer 5000 machine. The results of the breath test revealed Hayes had a blood alcohol content of .11%. Thereafter, Hayes was charged with driving while intoxicated, a class A misdemeanor; operating with at least .10% by weight of alcohol in his blood, a class C misdemeanor; and unsafe lane movement, a class C infraction.

On October 24, 1994, Hayes filed a motion to suppress alleging the results of his breath test were inadmissible because "the test equipment was not approved in accordance with the rules adopted under subsection (a) [of Ind.Code 9–30–6–5]," (R. 6), since the director of the department of toxicology of the Indiana University school of medicine had not promulgated standards and regulations for the *selection* of breath test equipment. The trial court granted Hayes' motion, and the State brings this interlocutory appeal arguing our recent holding in *Key v. State* (1995), Ind.App., 651 N.E.2d 1190, wherein we addressed the same issue raised by Hayes in his motion to suppress, necessitates reversal of the trial court's order.

*DECISION*

Ind.Code 9–30–6–5 provides in pertinent part as follows:

(a) The director of the department of toxicology of the Indiana University school of medicine shall adopt rules under IC 4–22–2 concerning the following:

\* \* \* \* \* \*

(2) Standards and regulations for the:

(A) *Selection;* and

(B) Certification;

of breath test equipment and chemicals.

(3) The certification of the proper technique for administering a breath test.

\* \* \* \* \* \*

(c) Certified copies of certificates issued in accordance with rules adopted under subsection (a) . . .

\* \* \* \* \* \*

(2) Constitute prima facie evidence that the equipment or chemical:

(A) was inspected and approved by the department of toxicology on the date specified on the certificate copy. . . .

\* \* \* \* \* \*

(d) Results of chemical tests that involve an analysis of a person's breath *are not admissible* in a proceeding . . . if:

(1) The test operator;

(2) The test *equipment;*

(3) The chemicals used in the test, if any; or

(4) The techniques used in the test;

*have not been approved in accordance with the rules adopted under subsection (a).*

(Emphasis added).

In *Key, supra,* the defendant did not argue that the Intoxilyzer 5000 machine was not approved. Rather, the defendant, like Hayes, argued the approval was invalid due to an absence of selection standards. Citing 260 Ind.Admin.Code 1.1–2–1(e)(1), (2) and (3), we noted that the Indiana Administrative Code sets forth performance requirements for breath test equipment. We also noted that 260 IAC 1.1–4–4 provides the appropriate techniques for administering a breath test using the Intoxilyzer 5000, thus ensuring the reliability of breath test results.

■  Thereafter, we concluded as follows:

Selection criteria are inherent in the various rules pertaining to breath test equipment. In order to be selected for use and to be properly certified, a breath test machine must be capable of performing tests and yielding accurate results in the manner described above. Further, when the Department adopts rules regarding the proper technique for administering a breath test using a particular model of breath test equipment, it necessarily has selected that model as reliable to analyze

breath samples within acceptable scientific standards for accuracy.

It is of no consequence that these rules were not specifically designated as "selection" standards. There is no requirement that the Department list standards for the selection of breath test equipment separately from the standards pertaining to certification, inspection and operation of the same equipment. We conclude that the administrative rules in effect at the time of Key's arrest were sufficient to satisfy the mandate of I.C. 9–30–6–5 that the Department of Toxicology adopt rules concerning the selection of breath test equipment.[1]

*Id.* at 1191–2.

Furthermore, and despite Hayes' protestations to the contrary, our conclusion here that sufficient standards for the selection of breath test equipment were in effect at the time of Hayes' arrest is not affected by the Department's recent enactment of 260 IAC 1.1–5–1 which provides the criteria a breath test machine must meet to be selected under I.C. 9–30–6–5. As noted in *Key, supra* at 1192, the criteria under this new rule and those found in 260 IAC 1.1–2–1(e) are essentially redundant.[2] "Thus, while the enactment of a separate rule specifically called 'Selection Criteria' is a useful clarification, it

was not required by Ind.Code 9–30–6–5." *Id.*

Finally, we find no evidence that the test operator, the test equipment, the chemicals used, if any, or the technique used to administer Hayes' breath test were not approved pursuant to the standards set forth by the Department. I.C. 9–30–6–5(d). Therefore, we conclude the Intoxilyzer 5000 breath test machine, which has been administered by Indiana law enforcement officers for well over a decade[3] and which was used to administer Hayes' breath test, was also " 'selected' in accordance with those same standards." *Id.*

Therefore, in declining Hayes' invitation to elevate form over substance, we find the trial court erred in suppressing the results of Hayes' breath test and, therefore, reverse.

Reversed.

CHEZEM and FRIEDLANDER, JJ., concur.

1. Essentially, the same issue was presented and, essentially, the same result was reached recently by Judge Staton in *Storrjohann v. State* (1995), Ind.App., 651 N.E.2d 294. However, because Judges Sharpnack and Garrard only concurred in Judge Staton's result, in *Key*, we determined this to be an issue of first impression. *Key, supra* at 1191 n. 1.

2. For example, 260 IAC 1.1–5–1(a)(1) requires a breath test machine to yield results in units of

percent by weight of alcohol in blood. Likewise, in *Baran v. State* (1994), Ind., 639 N.E.2d 642, 647, our supreme court interpreted 260 IAC 1.1–2–1(e)(2) to require that a machine be capable of measuring blood alcohol content as a percentage of alcohol by weight in the blood.

3. 260 IAC 1.1–4–4, which sets forth the approved methods for using the Intoxilyzer 5000, was filed December 13, 1983.