James S. BARAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S05–9409–CR–828.

Supreme Court of Indiana.

Sept. 1, 1994.

J.J. Paul, III Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, for appellant, James S. Baran.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee, State of Ind.

**ON PETITION TRANSFER**

SULLIVAN, Justice.

Following a bench trial, James S. Baran was convicted of operating a vehicle with .10%, or more by weight of alcohol in the blood, a class C misdemeanor.[1] Baran was sentenced to 60 days; the sentence was suspended. Baran was found not guilty of driving while intoxicated.[2]

A majority of the Court of Appeals' Fifth District reversed the conviction on the grounds there was insufficient evidence that the result of the breath test was expressed as a percentage by weight in the blood. *Baran v. State* (1993), Ind.App., 622 N.E.2d 1326 (2–1 decision, Rucker, J., dissenting). Because the majority holding in *Baran* conflicts with the majority holding in *Daum v. State* (1993), Ind.App., 625 N.E.2d 1296 (2–1 decision, Hoffman, J., dissenting), *trans. denied,* we grant transfer. Ind.Appellate Rule 11(B).

In reversing Baran's conviction for insufficient evidence, the Court of Appeals did not address all of the issues raised by Baran in his original appeal. Because we affirm the conviction, we do so here:

1.  Whether there was legal cause to stop Baran's vehicle and probable cause to offer a breath test;

2.  Whether the probable cause affidavit was erroneously admitted;

---

**1.** Ind.Code Ann. § 9–11–2–1(a) (Burns 1987). The current version is codified as Indiana Code § 9–30–5–1 (1993).

**2.** Ind.Code Ann. § 9–11–2–2 (Burns 1987). The current version is codified as Indiana Code § 9–30–5–2 (1993).

3. Whether the breath test result was erroneously admitted; and

4. Whether the evidence is sufficient to sustain the conviction.

### Facts

The evidence most favorable to the verdict shows that early in the morning on February 20, 1991, an Indiana State trooper observed that the truck being driven by Baran was weaving from lane to lane on the interstate. After signalling Baran to stop, the trooper detected an odor of alcohol. The trooper then summoned a service truck to impound Baran's vehicle and transported him to Speedway, Indiana, where Baran submitted to a breath test conducted by the trooper with the use of an Intoxilyzer 5000 machine. The Intoxilyzer machine printout reported that Baran's blood alcohol content was .11.

### 1. There was Probable Cause to Offer a Breath Test

Baran argues that the trial court should have suppressed all evidence obtained after he was stopped because the State failed to establish that the trooper had either legal cause to stop his vehicle or probable cause to offer a breath test.

Resolution of the first part of Baran's argument is guided by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in which the Supreme Court recognized that investigative stops of limited duration and reasonably related in scope to the justification for their initiation are legal. *Terry* held that a police officer need not have probable cause to make an arrest when making an investigative stop, but must be able "to point to specific and articulable facts which, taken together with rational inferences from those facts," reasonably warrant " 'the intrusion upon the constitutionally protected interests' " of private citizens. *Id.*, 392 U.S. at 21–22, 88 S.Ct. at 1880 (quoting *Camara v. San Francisco Mun. Ct.*, 387 U.S. 523, 534, 87 S.Ct. 1727, 1733–34, 18 L.Ed.2d 930 (1967)). Indiana courts follow the *Terry* guidelines. *Platt v. State* (1992), Ind., 589 N.E.2d 222, 225–26; *Luckett v. State* (1972), 259 Ind. 174, 179, 284 N.E.2d 738, 741. Whether a particular fact situation justifies an investigatory stop is determined on a case by case basis. *Platt*, 589 N.E.2d at 226. The requirements of the Fourth Amendment are satisfied if the facts known to the officer at the moment of the stop are such that a person "of reasonable caution" would believe that the "action taken was appropriate." *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880. Indiana has adopted this test. *Gipson v. State* (1984), Ind., 459 N.E.2d 366, 368.

Here, the trooper watched Baran's truck weave more than once back and forth between lanes as it traveled along the interstate. Given this conduct and the potential danger it posed to other motorists, it was reasonable for the trooper to believe that further investigation was warranted. *Clark v. State* (1990), Ind., 561 N.E.2d 759, 762. *See also Sell v. State* (1986), Ind.App., 496 N.E.2d 799, 800 (stop appropriate where car was traveling 35 miles per hour below the posted speed limit); *Jaremczuk v. State* (1978), 177 Ind.App. 628, 630–31, 380 N.E.2d 615, 617 (stop appropriate where vehicle was weaving within the lane of traffic and momentarily left the roadway). A person of reasonable caution would believe this stop was appropriate.

Baran argues that even if the initial stop was legal, the trooper did not have probable cause to take him into custody and offer him a breath test. However, the cases Baran cites in support of this argument are distinguishable. In *Irwin v. State* (1978), 178 Ind.App. 676, 682, 383 N.E.2d 1086, 1090, for example, the court held that the officer's perception of odor of alcohol and defendant's admission that he had recently consumed some beer were insufficient to give the officer probable cause to make an arrest for public intoxication. By contrast, here, the trooper not only smelled alcohol, but also observed Baran driving in an unsafe manner. This is sufficient probable cause to offer a breath test. *State v. Johnson* (1987), Ind. App., 503 N.E.2d 431, 432, *trans. denied.*

In addition to these legal arguments about the *Terry* stop and probable cause to offer the breath test, Baran asserts that the trooper should not have been permitted to testify about observing Baran's driving be-

cause the trooper had no independent recollection of those observations. The record does not support this argument. Although the trooper could not remember every detail surrounding the stop, there were specific details that he did recall: that Baran was not the owner of the truck; that there was a passenger in the truck; and that Baran was from out-of-state and was returning from the Daytona 500. The trooper testified that he specifically recalled observing the truck weave from lane to lane on the interstate. The fact that he could not recall every detail goes to the weight of the evidence, not its admissibility. *Stanley v. State* (1987), Ind., 515 N.E.2d 1117, 1119. It was for the factfinder, the trial court in this case, to determine what weight to give the trooper's testimony. No error occurred.

Finally, Baran claims that the trial court erred in failing to allow testimony from other witnesses who would have contradicted the trooper's testimony about Baran's driving. The record reveals otherwise.

Baran moved to suppress evidence of everything that took place after he was signalled to pull over by the trooper. Baran contended that the trooper's stop was pretextual because he had not, in fact, observed the truck weaving between lanes of traffic. To support his motion, Baran's counsel offered testimony from both Baran and his passenger to that effect. Baran correctly notes that the offered testimony would have done nothing more than create a conflict in the evidence, that such conflicts presented on a motion to suppress are to be resolved by the trial court, and are reviewed on appeal as a sufficiency question. *Brandon v. State* (1978), 268 Ind. 150, 154, 374 N.E.2d 504, 506. Baran's assertions notwithstanding, the trial court did not preclude Baran from presenting this testimony; rather, the trial court weighed the evidence presented, and chose to believe the trooper's testimony. No error occurred.

### 2. No Reversible Error in Admission of Probable Cause Affidavit.

■ Baran next asserts that the trial court erred in admitting over his hearsay objection the probable cause affidavit prepared by the trooper because the affidavit did not meet the requirements for admission of prior statements set out by this Court in *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, 654.[3]

*Modesitt* concerned the admission of a prior statement by a witness for use as substantive evidence in a situation where no hearsay exception was applicable, and it expressly stated that the new rule does not affect recognized exceptions to the hearsay rule. *Id.* at 654. Here, the probable cause affidavit was admissible under an existing exception to the hearsay rule, past recollection recorded. *Gee v. State* (1979), 271 Ind. 28, 36, 389 N.E.2d 303, 309.[4]

■ In any event, the probable cause affidavit was admitted to prove the results of field sobriety tests. Because the trooper had probable cause to offer Baran a breath test before the field sobriety tests were conducted, the results of the field sobriety tests were relevant only to the charge of driving while intoxicated. Baran was found not guilty of that charge and, therefore, any error in the admission of the document was harmless.

### 3. Admission of Breath Test Result Was Proper

Baran claims that the result of the breath test was improperly admitted because the State failed to establish the proper procedure for administering the test and that the test operator followed this procedure.

■ Indiana law establishes the necessary foundation for admission of breath tests. Evidence of a defendant's blood alcohol content may be established by chemical tests only if the test operator, the test equipment, the chemicals used and the techniques used in the test have been approved by the

---

3. *Modesitt* replaced the so-called "Patterson Rule" first applied in *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, with Rule 801 of the Federal Rules of Evidence. The subject is now controlled by Rule 801 of the Indiana Rules of Evidence, adopted effective January 1, 1994.

4. Effective January 1, 1994, this exception to the hearsay rule is now governed by Rule 803 of the Indiana Rules of Evidence.

Indiana Department of Toxicology. Ind. Code Ann. § 9–11–4–5 (Burns 1987).[5] As the party offering the results of the breath test, the State bears the burden of establishing this foundation. *Hopkins v. State* (1991), Ind., 579 N.E.2d 1297, 1303; *Regan v. State* (1992), Ind.App., 590 N.E.2d 640, 646. At trial, the State must establish the proper procedure, *Hartman v. State* (1980), Ind. App., 401 N.E.2d 723, 725, and that the operator followed that procedure. *Boothe v. State* (1982), Ind.App., 439 N.E.2d 708, 711.

■ The approved procedure for operating the breath machine is set out in Indiana Administrative Code tit. 260, r. 1.1–4–4.[6] This regulation is to be judicially noticed. Ind.Code Ann. § 4–22–9–3 (Burns 1990);[7] *Hatch v. State* (1989), Ind.App., 547 N.E.2d 276, 277. The proper procedure for administering the test was established at trial.

■ Baran next contends that the State failed to establish that the trooper followed these procedures. Although it is true that the trooper's testimony about the steps he performed in conducting the test was not a verbatim recitation of the procedures in the regulation, that is not required. Baran complains that there was insufficient evidence that he was kept under a continuous period of observation for twenty minutes as required in step (1). Baran vigorously cross-examined the trooper on this issue. It was for the trial court to resolve any inconsistencies in the evidence, and its determination of a fact will not be set aside unless the nonconflicting evidence supports only a result contrary to his determination. *Taylor v. State* (1988), Ind., 530 N.E.2d 1185, 1186. Our review of the record assures us that there was sufficient evidence from which the trial court could have concluded that the trooper properly performed each step of the procedure.

### 4. The Evidence is Sufficient to Sustain the Conviction.

■ Baran claims there was insufficient evidence that the breath test result was reported by weight of alcohol in the blood as required by Indiana Code § 9–11–2–1(a), and that as a result, the trial court erred in denying his motion for judgment on the evidence.

Our standard of review on a claim that the evidence was insufficient is well established. This Court neither reweighs the evidence nor judges the credibility of the witnesses. *Platt,* 589 N.E.2d at 227. We consider only the evidence most favorable to supporting the verdict. *Id.* If there is substantial evidence of probative value to support the conclusion that the defendant is guilty beyond a

---

**5.** The current version is codified as Indiana Code § 9–30–6–5(d) (1993).

**6.** Indiana Administrative Code tit. 260, r. 1.1–4–4 provides:

(1) The person to be tested must have had nothing to eat or drink, must not have put any foreign substance in his/her mouth or respiratory tract, and must not smoke within twenty (20) minutes prior to the time a breath sample is taken.

(2) Power switch must be in the ON position. Depress the START TEST button when indicated on the LED screen.

(3) Fill in a PRINT RECORD card with the appropriate information and place it in the PRINTER SLOT.

(4) When instrument displays "Please blow" attach a new mouthpiece to the BREATH TUBE and instruct the subject to deliver his breath sample until the audible signal stops.

(5) Check the PRINT RECORD to be sure it is correct.

(6) If a failure to provide an adequate breath sample was caused by the lack of cooperation by the subject, the operator should record that the test was refused.

**7.** Indiana Code § 4–22–9–3 provides:

(a) Any rule that has been adopted in conformity with IC 4–22–2 (including a matter incorporated by reference into a rule) shall be judicially noticed by all courts and agencies of this state.

(b) Subject to subsection (c), the official publication of a rule in the Indiana Register or the Indiana Administrative Code shall be considered prima facie evidence that the rule was adopted in conformity with IC 4–22–2 and that the text published is the text adopted.

(c) The 1979 edition of the Indiana Administrative Code shall be conclusively presumed to contain the accurate, correct, and complete text of all rules in effect on December 31, 1978. All rules filed with the secretary of state before December 31, 1978, and not compiled in the 1979 edition of the Indiana Administrative Code are void.

reasonable doubt, we affirm the conviction. *Id.*

The only evidence concerning the result of the breath test was the printout from the breath test machine which read:

| Test | BAC VALUE | TIME |
|---|---|---|
| AIR BLANK | .00 | 03:36 |
| SUBJECT TEST | .11 | 03:37 |
| AIR BLANK | .00 | 03:37 |
| REPORTED VALUE | .11 | 03:37 |

Baran argues that (1) because the machine tests breath, but Indiana Code § 9–11–2–1(a) requires evidence of alcohol in the *blood,* there must be evidence of the process by which the machine converts the content of alcohol in the subject's breath to the content of alcohol in the subject's blood, and (2) there must be evidence that the test result number on the printout represents the percentage by weight of alcohol in the blood. The State responds that the trial court may take judicial notice that Intoxilyzer 5000 machines determine the percentage of alcohol by weight in a person's blood.

*Conversion from breath content to blood content issue.* Baran relies on *Melton v. State* (1992), Ind.App., 597 N.E.2d 359, 361, *trans. denied,* and *Shuman v. State* (1986), Ind.App., 489 N.E.2d 126, 129–30, *trans. denied.* The Court of Appeals in *Daum v. State,* 625 N.E.2d at 1298, rejected this same argument. The *Daum* court noted that neither *Melton* nor *Shuman* controlled

because they both involved tests taken from blood samples reduced to plasma or serum. Alcohol content of whole blood is not the same as the alcohol content of either the plasma or serum portion of blood. Therefore, the results of tests performed on plasma or serum require con-

version to obtain the percentage of alcohol by weight in whole blood, or BAC.

In the present case, Daum's blood alcohol content was tested by an Intoxilyzer breath test machine which expresses its results by the required percentage by weight of alcohol or BAC. *See Burp [v. State* (1993), Ind.App.], 612 N.E.2d [169] at 174; 260 [Ind.Admin.Code] 1.1–2–1(e)(2). Therefore, no conversion is necessary to establish BAC supporting a conviction [of operating a vehicle with .10%, or more, by weight of alcohol in the blood.]

*Daum,* 625 N.E.2d at 1298 (some citations omitted). We agree with the rationale set out in *Daum* and Judge Rucker's dissenting opinion in this case.[8] Pursuant to Indiana Administrative Code tit. 260, r. 1.1–2–1(e)(2), breath test equipment is tested for accuracy using a known ethanol-water or ethanol-gas solution, measured as a percentage of weight by volume.[9] Thus, in order to be properly certified by the Department of Toxicology, the machines must measure blood alcohol content as a *percentage* of alcohol by *weight* in the blood.

■■ Courts are permitted to take judicial notice of Indiana law. *Hernandez v. State* (1982), Ind., 439 N.E.2d 625, 631; Ind.Evidence Rule 201.[10] In fact, courts are required to take judicial notice of the regulations concerning breath testing. Ind.Code § 4–22–9–3; *Hatch,* 547 N.E.2d at 277. Judicial notice relieves the party having the burden of establishing a particular fact from submitting formal proof of that fact. *Hutchinson v. State* (1985), Ind., 477 N.E.2d 850, 854. Accordingly, the trial court was entitled to take judicial notice of the fact that the Intoxilyzer 5000 machine automatically performs the "conversion" which Baran claims is required.

Such test results shall not deviate more than minus eight percent (−8%) from the known alcohol content of the ethanol-water or ethanol-gas test solution. (Example: 0.10% w/v solution of ethanol in water shall test within the range of 0.092% to 0.100%). No test result for purpose of certification shall exceed the known ethanol content of the test solution.

---

8. After this court's grant of transfer in *Baran* and denial of transfer in *Daum* by order dated February 18, 1994, the Court of Appeals decided two additional cases involving the same sufficiency question as here. *Mullins v. State,* (1994), Ind. App., 629 N.E.2d 886 and *Nasser v. State,* (1994), Ind.App., 630 N.E.2d 571 For the reasons given in today's opinion, *Mullins* and *Nasser* are disapproved.

9. Indiana Administrative Code tit. 260, r. 1.1–2–1(e)(2) provides:

10. Effective January 1, 1994.

*Meaning of Results on Printout Issue.* Similarly, because the breath test equipment must measure blood alcohol content as a percentage of alcohol by weight in the blood in order to be properly certified by the Department of Toxicology, the trial court was entitled to take judicial notice of the fact that the Intoxilyzer 5000 machine printout expresses the test result as a percentage of alcohol by weight in the blood.

We note that the trial court did not notify the parties that it would take judicial notice of the conversion from breath content to blood content and the meaning of the results on the printout.[11] Because this was a bench trial and the court was commanded by statute to take judicial notice that the breath testing machines must measure blood alcohol content as a percentage of alcohol by weight in the blood, the absence of notice was not reversible error. Where a jury serves as the factfinder in a criminal case, however, the trial court must:

> expressly take judicial notice of the effect of the Administrative Code's standards and regulations for the selection and certification of breath test equipment and chemicals; and
>
> instruct the jury "that it may, but is not required to, accept as conclusive any fact judicially noticed."

Ind.Evidence Rule 201(g).[12]

### Conclusion

Accordingly, we now grant transfer, vacate the opinion of the Court of Appeals and affirm Baran's conviction under Indiana Code § 9–11–2–1(a) for operating a vehicle with a blood alcohol content in excess of .10%.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs in result with separate opinion.

DeBRULER, Justice, concurring in result.

I agree with the result in this case because appellant was in fact found not guilty of the charge, driving while intoxicated, which relied upon the information in the probable cause affidavit. I write separately in order to express my concerns about the admissibility of these types of documents.

The admission of past recollection recorded is governed by Ind.Evidence Rule 803. That rule reads in relevant part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness.
>
> . . . .
>
> **(5) Recorded recollection.** A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit. . . .

Evid.R. 803. This rule enables a court to obtain important and reliable evidence that would otherwise be lost due to the vagaries and failures of human memory.

---

11. We note that in addition to the two judicially noticed facts challenged by Baran—the conversion from breath content to blood content and the meaning of results on the printout—there is a third fact of which the trial court effectively took judicial notice. That fact is the relationship between blood alcohol content and the test chemicals used to calibrate the Intoxilyzer 5000 machine, i.e., that the ethanol-water or ethanol-gas solutions used to calibrate the breath test equipment accurately simulate an alcohol-breath solution. Because Indiana Code § 9–30–6–5(a)(2) mandates the Director of the Department of Toxicology to adopt standards and regulations for the selection and certification of breath test equipment and chemicals, and because Indiana Administrative Code tit. 260, r. 1.1–2–1(e)(1) requires the use of such solutions to calibrate the breath test equipment, we hold that it was proper for the trial court to take judicial notice of the relationship between blood alcohol content and the test chemicals. Ind.Code § 4–22–9–3(a).

12. This is the rule for instructing juries in criminal cases. In a civil trial or proceeding, the court must instruct the jury to accept as conclusive any fact judicially noticed. Ind.Evidence Rule 201(g).

However, while a court participates in this pursuit of truth it must remain ever mindful of the attendant risks. The notes that a police officer jots down or the routine reports that the officer files provide built-in incentives for veracity, e.g. the officer and other members of the department may well rely on such writings for continuing investigations. Unfortunately, a contrary incentive is present when an officer prepares a probable cause affidavit. Conscious dishonesty will be unusual, but certainly an officer would have every reason to be quite selective when choosing what details to include, even exaggerating on occasion. The purpose of the document, after all, is to *persuade* a judicial officer at a hearing that an arrest was justified. This goes to the issue of whether the document has been "shown . . . to reflect that knowledge correctly." Evid.R. 803(5).

While I agree that in this case the error was harmless, I do not agree that the probable cause affidavit was admissible. We must remain ever mindful that these rules of evidence are to support twin goals, "that the truth may be ascertained and *proceedings justly determined.*" Ind.Evidence Rule 102 (emphasis added).