Allen SMITH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–9504–CR–125.

Court of Appeals of Indiana.

April 22, 1996.

Transfer Denied June 26, 1996.

Annette Fancher Sheldon, Indianapolis, for Appellant.

Pamela Carter, Attorney General of Indiana, Christopher L. LaFuse, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellant–Defendant, Allen Smith ("Smith") appeals his three convictions for Theft, one as a class C felony, and two as class D felonies. We affirm.

### Issues

Smith presents two, multi-part issues for our review which we restate as follows:

I. Whether a decedent's estate is a person within the meaning of IC 35–411–22 and IC 35–43–4–2; and,

II. Whether the State presented sufficient evidence, and whether the jury was properly instructed, as to the issue of intent.

### Facts and Procedural History

The facts most favorable to the convictions indicate that in 1986, Smith, who was an attorney at that time, prepared and helped execute a will for Gardful Hendrix. Hendrix died in 1991. His will provided that his property be left to his two sons, Gerald and James, and that James should act as the personal representative. Yet, because neither of the sons was an Indiana resident, Smith offered to be the personal representative. The sons agreed, and the will was probated and an estate opened shortly thereafter.

In March of 1992, James spoke with Smith regarding the amount in the estate's checking account. Because Smith quoted an amount considerably less than James expected, James wrote Smith a letter seeking clarification of the $86,000 deficit. James then travelled to Indiana to discuss the matter with Smith. However, when James arrived, Smith told him the estate file was not in a presentable order, but that since the court had to approve all expenditures from the estate's account, there was no need to be concerned.

Once the court approved the final accounting, James phoned Smith several times seeking his final disbursement. Each time he called, Smith informed him that the check was in the mail. Yet, neither son ever received any money from the estate because between January of 1992 and March of 1993, Smith had written twenty-eight checks on the estate's account. These checks, totalling approximately $130,000, were payable to Smith, his law firm, a corporation Smith controlled, and a finance company to which Smith owed money.

The State charged Smith with three counts of theft. Prior to the trial, in response to Smith's motion to dismiss the information, the State amended the information to change the object of the "intent to deprive" element from the "estate of Gardful Hendrix" to "the beneficiaries of the Estate of Gardful Hendrix." At trial, Smith admitted that he exerted unauthorized control over funds that were the property of the estate of Gardful Hendrix. A jury found Smith guilty as charged.

### Discussion and Decision

#### I. Estate as a Person

Smith contends that the trial court erred in granting the State's motion to amend the information. He asserts that the amendment incorrectly changed only the language with

respect to the intent portion of the information, rather than changing both the intent element and the control element. He further asserts that the amendment still inappropriately charged Smith with a class C felony. The State argues that Smith has waived the argument.

Indiana Appellate Rule 8.3(A)(7) provides: Each error that appellant intends to raise on appeal shall be set forth specifically and followed by the argument applicable thereto.... The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statute, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review.

App.R. 8.3(A)(7). While it is true that Smith fails to cite any case law in support of his argument, we are unaware of any cases which directly address his theory that an estate cannot be a person for purposes of the theft statute.[1] Accordingly, the issue is not waived and we address this novel argument.

The Indiana Code provides:

A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony. However, the offense is a Class C felony if the fair market value of the property is at least one hundred thousand dollars ($100,-000).

Ind.Code § 35–43–4–2(a).

A person is defined as "a human being, corporation, limited liability company, partnership, unincorporated association, or governmental entity." Ind.Code § 35–41–1–22. Thus, the applicable definition of a person includes not just natural persons, but artificial persons as well. *Cf. RJR Nabisco Holdings v. Dunn,* 657 N.E.2d 1220, 1223 (Ind.

1995), *reh. denied,* (discussing how the term individual "connotes a natural person as distinguished from an organization or other artificial person, including an estate"). While an estate is not specifically included within the definition of "person," we see no reason why an estate would fall outside the ambit of the statute. Like a corporation, limited liability company, partnership, unincorporated association, or governmental entity, an estate is a fictitious legal entity which may possess property, and, as demonstrated here, be the subject of a crime against that property. In addition, an estate, like other artificial persons, although one entity, may represent the interests of many individual persons.

Because we hold that an estate is a person for purposes of the theft statute, we find no error in the State's decision not to amend the control portion of its information from "the estate of Gardful Hendrix" to "the beneficiaries" of his estate. In fact, we view the State's original information, which named the estate in both the control element and the intent element, as a properly worded information. Thus, contrary to Smith's view, the information should not have been amended to read "the beneficiaries" in place of "the estate" in any part of the information. That the State did change the wording in one portion is of no consequence since the jury found Smith guilty of class C theft. Applying the instructions which referred to the estate, the jury viewed the estate as a person against whom a theft of over $100,000 occurred. In view of our resolution that an estate is a person, we find no reversible error in the information or in charging Smith with class C theft.

## II. Intent Element

Smith next contends that the State failed to "present sufficient evidence from which the jury could reasonably infer that Mr. Smith intended to permanently[2] deprive

---

1. In *Hiller v. State,* 412 N.E.2d 293 (Ind.Ct.App. 1980), a case in which we affirmed a conviction for theft of estate property, neither party questioned whether an estate falls within the definition of "person."

2. We note in passing that the applicable version of the theft statute does not contain the word "permanently." *Cf. Nelson v. State,* 337 N.E.2d 877, 881, 167 Ind.App. 59 (1975), *citing Williams v. State,* 253 N.E.2d 242, 253 Ind. 316 (1969)

the beneficiaries of the Hendrix estate of their property." Our standard of review on a claim that the evidence was insufficient is well-established. *Baran v. State,* 639 N.E.2d 642, 646 (Ind.1994). This court neither reweighs the evidence nor judges the credibility of the witnesses. *Id.* We consider only the evidence most favorable to supporting the verdict. *Id.* If there is substantial evidence of probative value to support the conclusion that the defendant is guilty beyond a reasonable doubt, we affirm the conviction. *Id.* at 646–47.

■ The intent necessary to support a conviction for theft can be inferred from surrounding circumstances. *Anglin v. State,* 490 N.E.2d 721 (Ind.1986). A direct statement of intent from the defendant is not necessary. *Id.* "A person engages in conduct 'intentionally' if, when he engaged in the conduct, it is his conscious objective to do so." Ind.Code Sec. 35–41–2–2(a).

■ It is the jury's province to hear testimony and assess the truth thereof. *Wear v. State,* 593 N.E.2d 1179, 1179 (Ind. 1992). The jury heard Smith's testimony that he intended to return the money over which he took unauthorized control. The jury also was presented with evidence that Smith did not divulge his "withdrawals" on the final accounting, that he never furnished monthly statements regarding the estate, that he refused to produce the estate file when James arrived to discuss the large discrepancy, and that, when asked by the beneficiaries when their final disbursements would arrive, he repeatedly misstated that "the checks were in the mail." Because there was substantial evidence of probative value from which the jury could infer that Smith intended to deprive the estate of property, we will not substitute our judgment for the jury's based solely on Smith's self-serving testimony.

■ Smith also argues that the trial court erred when it did not *sua sponte* give instructions defining the specific intent terms. Smith neither objected to the lack of defining instructions nor tendered instructions of his own. Generally, a party who fails to tender instructions on an issue cannot complain that the instructions were incomplete with regard to that issue. *Clark v. State,* 561 N.E.2d 759, 764 (Ind.1990). Like the defendant in *McIntosh v. State,* 638 N.E.2d 1269 (Ind.Ct.App. 1994), *trans. denied,* Smith attempts to avoid waiver by characterizing the court's failure to instruct as fundamental error. Thus, we must determine whether the omission of such an instruction created a special prejudicial effect. *Abercrombie v. State,* 478 N.E.2d 1236, 1239 (Ind.1985).

■ The lack of definitional instructions did not have the prejudicial effect asserted by Smith. The trial court read jury instructions which set out the elements of conversion as well as the elements of theft. As such, the jury was instructed that in order to convict for theft, rather than merely conversion, they would have had to find that the State proved the additional "intent to deprive" element. Even if they utilized a layman's definition of intent, they were alerted to the fact that a conviction of theft requires more than intentionally or knowingly exerting unauthorized control over property. Their verdict indicates that they weighed the evidence and found that it supported the additional finding of intent to deprive. Accordingly, Smith has shown no special prejudicial effect in this regard.

Affirmed.

RILEY and ROBERTSON, JJ., concur.

(applying Ind.Ann.Stat. § 10–3030 (1969 Cum. Supp.)).