Steven A. **BERRY**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 27A05–9903–CR–101.

Court of Appeals of Indiana.

Dec. 20, 1999.

Matthew P. Ryan, Ryan & Ryan, Marion, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Defendant Steven A. Berry (Berry) appeals his convictions of operating a vehicle with at least ten hundredths percent (0.10%) of alcohol by weight in grams in one hundred (100) milliliters of his blood, or two hundred ten (210) liters of his breath, a Class C misdemeanor, Ind.Code § 9–30–5–1; [1] and operating a vehicle while intoxicated with a prior conviction of operating a vehicle while intoxicated within five years, a Class D felony, Ind.Code § 9–30–5–3.

We reverse.[2]

### ISSUE

Berry raises three issues [3] for our review, one of which we find dispositive and

1. Ind.Code § 9–30–5–1 states that:
   (a) A person who operates a vehicle with at least ten-hundredths percent (0.10%) of alcohol by weight in grams in:
   (1) one hundred (100) milliliters of the person's blood; or
   (2) two hundred ten (210) liters of the person's breath;
   commits a Class C misdemeanor.

2. This decision in effect reverses both convictions because the charging information for Count II, operating a vehicle while intoxicated with a prior conviction of operating a vehicle while intoxicated within five years, a Class D felony, Ind.Code § 9–30–5–3, contains the element of being charged and convicted of the offense in Count I. Because we reverse the Count I conviction, we must also reverse the Count II conviction.

3. In the State's brief, it raises the issue of whether Berry's conviction can survive the decision in *Sales v. State*, 714 N.E.2d 1121 (Ind.Ct.App.1999). In that case, Sales was charged and convicted under Ind.Code § 9–30–5–1(a)(1), a Class C misdemeanor, with operating a vehicle with at least .10% by weight of alcohol in 100 milliliters of his blood as a result of a breath test result of .14 grams of alcohol per 210 liters of breath. This court held in *Sales* that the alcohol-breath provision (section 2) of Ind.Code § 9–30–5–1(a) is defective on its face and in order to sustain a conviction under Ind.Code § 9–30–5–1, the State must prove beyond a reasonable doubt that the person charged with the crime, operated a vehicle with at least .10% by weight of alcohol in grams in 100 milliliters of the person's blood. *Id.* at 1129.

restate as: whether the trial court erred by failing to take judicial notice and in failing to instruct the jury of the effect of breath tests pursuant to the Department of Toxicology regulations.

## FACTS AND PROCEDURAL HISTORY

On August 9, 1997, Jonesboro Police Officer Gary Robbins (Robbins) observed Berry driving his vehicle with no taillights, crossing the centerline of the road three times, and failing to stop at a stop sign. As a result of these observations, Robbins pulled Berry over and administered several field sobriety tests. Berry failed each test.

Robbins transported Berry to the Gas City Police Department to give Berry a breath test. Following proper procedure, Officer Kirk McCollum, a certified chemical test operator, administered the test on a certified and recently calibrated Intoxilyzer 5000. The machine reported a result of .13. Berry was charged with Count I, operating a vehicle with at least 0.10% of alcohol by weight in grams in 100 milliliters of his blood, or 210 liters of his breath, under Ind.Code § 9–30–5–1. Berry was also charged with Count II, operating a vehicle while intoxicated with a previous operating while intoxicated conviction within five years under Ind.Code § 9–30–5–3. Berry was also charged with two traffic infractions.

However, the State argues that the *Sales* decision is of no matter because Berry was charged under both the breath and blood provision of Ind.Code § 9–30–5–1. In his reply brief, Berry argues that his conviction does not survive this court's decision in *Sales* because the State dismissed his charge under Ind.Code § 9–30–5–1(a)(1) and (2), and convicted him only under the alcohol-breath section (section 2). Therefore, Berry argues that his conviction cannot stand because this court held in *Sales* that Ind.Code § 9–30–5–1(a)(2) is defective on its face and cannot sustain a conviction. Nevertheless, the State is correct. Berry was charged and convicted under Ind. Code § 9–30–5–1 generally, and not under the alcohol-breath or the alcohol-blood provision specifically. The amended charging informa-

On October 26, 1998, a jury trial was held, and the jury returned a guilty verdict for Counts I and II, and not guilty of the traffic infractions. On November 19, 1998, the trial court sentenced Berry to be imprisoned four and one-half (4½) years. Berry now appeals.

## DISCUSSION AND DECISION

Berry argues that the trial court erred by failing to take judicial notice of the administrative regulations for selecting and certifying breath test equipment and in failing to instruct the jury regarding this judicial notice. At the trial, the court did not take judicial notice of the Indiana Administrative Code's standards and regulations for the selection and certification of breath test equipment and chemicals.[4] Instead, the following colloquy took place between the trial judge and the Deputy Prosecuting Attorney:

> Mr. Faulk [Deputy Prosecuting Attorney]: Your Honor, I would ask the Court to take judicial notice of the effect of the breath test, uh, regulations and Indiana Administrative Code 260 1.1 to 4.8 and 1.1 to 5–1.
>
> The Court: Do you have a copy of them since I don't have them in my head?
>
> Mr. Faulk: Yes I do, Your Honor.
>
> The Court: What does it relate to? Any issue in this case?
>
> Mr. Faulk: I'm sorry?

tion for Count I, operating a vehicle while intoxicated, a Class C misdemeanor, under Ind.Code § 9–30–5–1 reads: "... Berry, did operate a vehicle with at least ten-hundredths percents [sic] (0.10%) of alcohol by weight in grams in one hundred (100) milliliters of the person's blood; *or* two hundred ten (210) liters of the person's breath." (R.154)(emphasis added). Thus, because Berry failed to raise the argument discussed in *Sales* and incorrectly argues that he was charged and convicted only under the alcohol-breath provision, we find his argument of no merit and refrain from discussing this issue any further.

4. Ind. Admin. Code tit. 260, r. 1 – 5.

The Court: Does it relate to any issue in this case?

Mr. Faulk: Uh, yes, absolutely it does.

The Court: Well then I suggest if it does you submit a proposed instruction on it then.

Mr. Faulk: Very good, Your Honor.

(R.302). However, Mr. Faulk never tendered a proposed instruction, and the trial judge never instructed the jury with respect to the administrative regulations.

In *Baran v. State*, 639 N.E.2d 642 (Ind. 1994), our supreme court settled the question of whether evidence must be introduced concerning the conversion of alcohol content in breath to alcohol content in blood. The court noted that the administrative regulations for selecting and certifying breath test equipment mandate that the machines must measure blood alcohol content as a percentage of alcohol by weight in the blood in order to be properly certified by the Department of Toxicology. *Id.* at 648. The court also noted that the trial court was entitled to take judicial notice of the fact that the breath test machine printout expresses the test result as a percentage of alcohol by weight in the blood. *Id.* In holding that the trial court did not err in taking judicial notice of the administrative regulations, our Supreme Court stated:

> We note that the trial court did not notify the parties that it would take judicial notice of the conversion from breath content to blood content and the meaning of the results on the printout. Because this was a bench trial and the court was commanded by statute to take judicial notice that the breath testing machines must measure blood alcohol content as a percentage of alcohol by weight in the blood, the absence of notice was not reversible error. Where a jury serves as the fact finder in a criminal case, however, the trial court must: expressly take judicial notice of the effect of the Administrative Code's standards and regulations for the selection

> and certification of breath test equipment and chemicals; and

> instruct the jury "that it may, but is not required to, accept as conclusive any fact judicially noticed."

Ind.Evidence Rule 201(g); *Id.* at 648 (footnotes omitted).

■ Here, the trial court did not instruct the jury that it may, but was not required to, accept as conclusive those sections of the Administrative Code judicially noticed. In fact, the trial court did not take judicial notice of any section of the Administrative Code, and therefore could not instruct the jury about any Administrative Code judicially noticed. Such was error. However, we found this error to be harmless in *Sturgis v. State*, 654 N.E.2d 1150 (Ind.Ct.App.1995).

In that case, Sturgis argued that the trial court erred by not instructing the jury as to the effect of the court's taking judicial notice of the administrative regulations. *Id.* at 1152. However, unlike the case at hand, the trial court in *Sturgis* did in fact take judicial notice of the relevant Indiana Administrative Code's standards and regulations for the selection and certification of breath test equipment and chemicals, but the trial court failed to instruct the jury that it may, but was not required to, accept as conclusive those sections of the Administrative Code judicially noticed. *Id.* at 1153. We held in *Sturgis* that if the trial court commits an error that might not have affected the outcome of the trial, such error is deemed harmless. *Id.* We reasoned that even though the trial court failed to instruct the jury, such error was harmless because other evidence was properly admitted that the printout from the breath test machine was a report of blood alcohol content as a percentage of alcohol by weight in blood. *Id.* Specifically, we noted the police officer's testimony:

> Deputy Prosecutor: And was that the Intoxilyzer there at the Bedford Police Department serial number 1175 that was used to record the test?

Trooper Cleveland: Sixty four–001175, yes sir.

Deputy prosecutor: Okay, thank you. Having administered, oh by the way, it says subject test .11, does that measure blood alcohol by weight?

Trooper Cleveland: Yes sir.

*Id.* Therefore, in that case we found the trial court's error harmless in failing to instruct the jury that it was not required to accept as conclusive any matter judicially noticed, because other evidence was received from the officer's testimony which stated the same facts; that the breath test machine measured blood alcohol by weight. *Id.*

Here, there was no evidence properly admitted that the printout from the breath test machine was a report of blood alcohol content as a percentage of alcohol by weight in blood. In fact, at trial, the police officer that administered the breath test, Captain Kirk McCollum, testified that the machine measures breath alcohol content by weight:

Deputy Prosecutor: As a, uh, certified and fully qualified Intoxilyzer 5000 operator, would you explain to the jury what an Intoxilyzer 500 is and what it does, Kirk.

Captain McCollum: It's a breath test instrument that's certified by the State Department of Toxicology and it measures the level of alcohol in a person's body by percentage in weight —— or weight in grams is how it measures that.

Deputy Prosecutor: Okay. And when you get a reading from the test what

does that signify in terms of breath alcohol?

Captain McCollum: When I get a reading, it signifies certain one-hundredths percent of alcohol by weight in grams per two hundred and ten liters of breath.

Deputy Prosecutor: Okay. So does that breath —— or does that Intoxilyzer 5000 measure breath alcohol content by weight then?

Captain McCollum: That's correct.

(R.290). Furthermore, at trial, the jury was given contradictory information of what Berry was charged with and what the State was attempting to prove at trial. Specifically, in his opening statement, the Deputy prosecutor stated that, "... and that was when he [Berry] took that breath test, uh, he was in violation of the law in that he had .13% by weight of alcohol in grams in 210 liters of his breath. And that's against the law in Indiana...." (R.230). However, Final Instruction # 10 stated that Berry had been charged, "under Count I, with operating a vehicle while have [sic] a blood alcohol content of ten-hundredths percent (.10) or more, by weight of alcohol in the blood of the defendant, a class C misdemeanor...." (R.153). Additionally, the amended information for Count I, as well as Final Instruction # 11, tracked the language of Ind.Code § 9–30–5–1, allowing the jury to conclude that Berry could be convicted under either the breath alcohol provision or the blood alcohol provision of Ind.Code § 9–30–5–1.[5] We find in this case that because of contradictory information received by the jury there exists a height-

**5.** The amended information for Count I provides: "On or about August 9th, 1997 in Grant County, State of Indiana at 4th and Water Street in Jonesboro, Indiana, the following named defendant, Steven A. Berry, did operate a vehicle with at least ten-hundredths percents [sic] (0.10%) of alcohol by weight in grams in one hundred (100) milliliters of the person's blood; *or* two hundred ten (210) liters of the person's breath." (R.154) (emphasis added).

Final Instruction # 11 reads: "The offense of operating a vehicle with .10% or more alcohol is defined by statute as follows:

I.C. 9–30–5–1.

A person who operates a vehicle with at least ten-hundredths percent (0.10%) of alcohol by weight in grams in:

(1) one hundred (100) milliliters of the person's blood; or

(2) two hundred ten (210) liters of the person's breath;

commits a Class C misdemeanor." (R.157).

ened importance that the trial judge take judicial notice and instruct the jury of the conversion from breath content to blood content and the meaning of the results on the breath test machine printout.

We find the trial court's failure to take judicial notice of the breath test machine's conversion from breath content to blood content in order to satisfy the Administrative Code's regulations, together with the trial court's failure to instruct the jury that it may, but was not required, to accept as conclusive those sections of the Administrative Code judicially noticed, is reversible error. This is because there was no evidence properly admitted that the printout from the breath test machine was a report of blood alcohol content as a percentage of alcohol by weight in blood. Therefore, the jury was uninformed that although breath test machines test alcohol in the breath, the trial court is entitled to take judicial notice that breath test machines automatically perform the conversion from alcohol content in the breath to alcohol content in the blood. As a result of the trial court's error, we must reverse Berry's convictions.

Reversed.

SHARPNACK, J., and KIRSCH, J., concur.