## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 28 2017, 9:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jane Ann Noblitt
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anastacia Sanchez-Franco,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | February 28, 2017<br><br>Court of Appeals Case No.<br>03A04-1610-CR-2279<br><br>Appeal from the Bartholomew<br>Superior Court<br><br>The Honorable Kathleen Tighe<br>Coriden, Judge<br><br>Trial Court Cause No.<br>03D02-1507-CM-3281 |

**Brown, Judge.**

[1] Anastacia Sanchez-Franco appeals her conviction for operating with a blood alcohol content of .08 as a class C misdemeanor. Sanchez-Franco raises one issue which we revise and restate as whether the trial court abused its discretion in admitting into evidence the results of a breath test. We affirm.

## *Facts and Procedural History*

[2] On June 14, 2015, Columbus Police Officer Maren Crabtree observed Sanchez-Franco drive left of center over a double yellow line and initiated a traffic stop. Officer Crabtree noticed the smell of an alcoholic beverage on Sanchez-Franco and asked her if she had anything to drink. Sanchez-Franco replied that she had had two drinks, Officer Crabtree administered three field sobriety tests which Sanchez-Franco failed, and Sanchez-Franco agreed to take a breath test and was transported to the police station. At the station, Officer Charles Bernard Sims administered a certified breath test, and the results indicated that Sanchez-Franco's blood alcohol content was 0.099.

[3] On July 1, 2015, the State charged Sanchez-Franco with: Count I, operating while intoxicated endangering a person as a class A misdemeanor; and Count II, operating with an alcohol concentration equivalent of at least 0.08 as a class C misdemeanor. The court held a suppression hearing on February 24, 2016. Sanchez-Franco filed a memorandum in support of motion to suppress on

March 7, 2016, the State filed a response on March 11, 2016, and the court denied Sanchez-Franco's motion to suppress on March 22, 2016.[1]

[4] On May 25, 2016, the trial court held a bench trial at which the State presented the testimony of Officers Crabtree and Sims. Officer Sims testified that he administered a certified breath test, that at the time he was certified to do so, and that he followed the standard procedures for that test. When asked the test results, Sanchez-Franco's counsel objected and argued: "I don't think that the foundation has been laid to be able to get any results in of this test. Specifically they have to lay the foundation that he has been certified to (garbled) specific instrument and I don't know what instrument." Transcript at 42. The prosecutor presented State's Exhibit 2, which contains a memorandum from the State Department of Toxicology stating that the officers named in the document are certified and recertified to administer evidentiary breath tests between November 2013 and November 30, 2015, and Officer Sims's name is included in the list. The prosecutor also presented State's Exhibit 3, which contains a Certificate of Inspection and Compliance of Breath Test Instrument stating that inspection of the instrument listed was performed, it was certified that the instrument was in compliance with the standards of 260 IAC 2-3-2, the inspection date was June 9, 2015, the instrument serial number was 010903,

---

[1] The record does not contain a written motion to suppress. The transcript of the suppression hearing and Sanchez-Franco's memorandum reveal that she moved to suppress the evidence based on the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution and argued that Officer Crabtree mistakenly believed that she committed a traffic violation.

and that the agency was the Columbus Police Department.  At the prosecutor's request, the court admitted State's Exhibit 1 containing the instrument printout showing the results of the breath test.  The instrument printout provides:

**Intox EC/IR-II:  Subject Test**

\* \* \* \* \*

Serial Number: 010903    Test Number: 211
Test Date: 06/14/2015    Test Time: 04:11 EDT

Operator Name:  Sims, Charles B
Operator Certification Number:  B115686
Agency Name:  COLUMBUS POLICE DEPT
Observation Began:  06/14/2015 at 03:50
Observer Name:  Sims, Charles B
Driver License Number:  0000000000
Subject Name: Sanchez, Anastacia F
Subject D.O.B.:  04/28/1976

\* \* \* \* \*

System Check: *Passed*

| Test | g/210L | Time |
|------|--------|------|
| BLK  | 0.000  | 4:12 |
| CHK  | 0.079  | 4:13 |
| BLK  | 0.000  | 4:14 |
| SUBJ | 0.103  | 4:16 |
| BLK  | 0.000  | 4:18 |
| SUBJ | 0.099  | 4:19 |
| BLK  | 0.000  | 4:21 |
| CHK  | 0.078  | 4:21 |
| BLK  | 0.000  | 4:23 |

Test Status Sample Complete

**RESULT:  0.099 g/210L**
**4:19 EDT,**

**6/14/2015**

State's Exhibit 1.

Officer Sims testified that Sanchez-Franco removed gum from her mouth prior to the start of the fifteen-minute observation period. He further testified that the test takes two different samples from the subject, that it records the lower of the two samples, and that in this case that result was 0.099. The court found Sanchez-Franco not guilty on Count I and guilty on Count II and sentenced her to sixty days, all suspended to probation.

## *Discussion*

The issue is whether the trial court abused its discretion in admitting into evidence the results of the breath test. Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. We may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record. *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998), *reh'g denied*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*.

Sanchez-Franco asserts that the State failed to establish the proper procedure for administering the breath test set forth at 260 IAC 2-4-2 and failed to show

that the test operator followed that procedure. She argues that the State gave only cursory attention to Step One of the procedure and there was no testimony regarding whether she had had anything to eat or drink or had smoked. The State responds that Sanchez-Franco waived review of any deficiency in the foundation that she did not raise in the trial court and that it provided an adequate basis for the trial court to conclude that the standard procedure was applied in this case.

[8]     The Indiana Administrative Code, at 260 IAC 2-4-2, provides the approved method for a breath analysis using the Intox EC/IR II breath test instrument. We first note that Sanchez-Franco states in his appellant's brief that he does not challenge Officer Sims's certification to operate the machine or the certification of the instrument. With respect to her argument that the State failed to establish the procedure for administering the breath test, we observe that she did not raise that argument before the trial court and thus that argument is waived.[2] *See Mullins v. State*, 646 N.E.2d 40, 44 (Ind. 1995) (noting that the defendant argued on appeal that the State offered no evidence of the approved procedure for administering the breath test, that while the defendant objected to the admission of the test results on other bases, he did not object on that basis at

---

[2] When the prosecutor asked Officer Sims the result of the breath test, Sanchez-Franco's counsel objected, stating he did not think a foundation had been laid for the admission of the test results and asserting: "Specifically they have to lay the foundation that he has been certified to (garbled) specific instrument and I don't know what instrument." Transcript at 42. Sanchez-Franco did not specifically object on the ground that the State did not establish the proper procedure for administering breath tests.

trial, and that failure to state the specific basis for objection waives the issue on appeal).

[9] Waiver notwithstanding, the Indiana Supreme Court has held that "the State need not present any evidence of what the approved procedures for administering a breath test are because regulations in the Administrative Code prescribe those procedures and because those regulations are to be judicially noticed." *Mullins*, 646 N.E.2d at 46. *See also Baran v. State*, 639 N.E.2d 642, 647-648 (Ind. 1994) (holding that, "[b]ecause this was a bench trial and the court was commanded by statute to take judicial notice that the breath testing machines must measure blood alcohol content as a percentage of alcohol by weight in the blood, the absence of notice was not reversible error"). We conclude that the approved procedure for administering a breath test was properly before the trial court and that, because this was a bench trial and the court was required to take judicial notice of the regulation concerning breath testing, the fact the court did not notify the parties it would take judicial notice of the applicable procedure does not require reversal. *See Mullins*, 646 N.E.2d at 46 (holding that the regulation prescribing the proper procedure for administering a breath test was properly before the court).

[10] Finally, with respect to whether Officer Sims followed the steps found at 260 IAC 2-4-2, we note that a verbatim recitation of the procedure in the regulation is not required. *See Baran*, 639 N.E.2d at 646. The record establishes that the State elicited testimony from Officer Sims that he administered the breath test and that he followed the standard procedure for that test. When asked if he

recalled the procedure or how he knew he followed it, Officer Sims answered "I used the form that is provided there. I go down the list, follow the form using standard operating procedures as called for." Transcript at 46.

[11] As to Step One in particular, 260 IAC 2-4-2 provides in part:

> STEP ONE: The person to be tested must:
>
> (A) have had nothing to eat or drink;
>
> (B) not have put any foreign substance into his or her mouth or respiratory tract; and
>
> (C) not smoke;
>
> within fifteen (15) minutes before the time the first breath sample is taken or at any time from the taking of the first breath sample until after the taking of the final breath sample.

[12] Officer Sims indicated that part of the procedure is to check for any foreign substances in the person's mouth, and when asked if there were any, he testified "I believe she had taken out some chewing gum prior to that and then we waited the required fifteen minute waiting period." *Id.* at 42. He later testified that the procedure involved "basically observing the subject, making sure there is nothing foreign in the mouth, checking physically," "there's a fifteen minute waiting period after that, make sure nothing else goes in the mouth after that," and "[t]he time is logged when the test is started." *Id.* at 46. When asked if the gum was removed from Sanchez-Franco's mouth "[r]ight before the exam," Officer Sims testified "(garbled) to ensure there is nothing in her mouth before the test starts. So once her mouth is clear" and "[a]fter her mouth is cleared,

the fifteen minute observation period will start." *Id.* at 47. The instrument printout showing the breath test results indicates that observation of Sanchez-Franco began at 3:50, the first sample was taken over fifteen minutes later at 4:16, and the second sample was taken at 4:19.

[13] Further, Sanchez-Franco does not specifically identify which step or steps following Step One that she believes Officer Sims did not perform. We note that a number of the steps beyond Step One in 260 IAC 2-4-2 are primarily administrative in nature, such as entering information into the test instrument,[3] and the fields contained in the instrument printout for Sanchez-Franco are completed with the information referenced in those steps, indicating the instrument operator entered the information as requested. Officer Sims testified he followed the procedure, and the instrument printout identifies the instrument used, states that a system check passed, indicates the name of Officer Sims and his certification number as the operator, provides that the observation began at 3:50 on June 14, 2015, indicates that Officer Sims was the test observer, identifies Sanchez-Franco as the subject and states her date of birth, and provides that the result of the second breath test sample was 0.099 grams of

---

[3] Steps Two and Three involve verifying the instrument is in ready mode and pressing enter to start the test; Step Four is inserting an identification card and entering the information of the breath test operator; Step Five is entering the beginning date and time of the fifteen-minute observation period; Steps Six and Seven involve entering the information of the officer with control of the subject during the fifteen-minute period; Step Eight is to enter incident information requested by the instrument display; Step Nine is entering subject information by inserting the subject's driver or identification card or entering information requested by the instrument display; Step Ten is placing a new mouthpiece in the breath tube, instructing the subject to deliver a breath sample, and removing the mouthpiece when prompted; Step Eleven is again having the subject deliver a breath sample; and Step Twelve is printing the instrument report and removing it from the printer. *See* 260 IAC 2-4-2.

alcohol per 210 liters of breath at 4:19 on June 14, 2015. The record does not reveal that Officer Sims did not follow the required steps of the procedure or indicate anything that calls into question the reliability of the instrument or the instrument printout. There was sufficient evidence from which the trial court could have concluded that Officer Sims properly performed each step of the procedure. *See Baran*, 639 N.E.2d at 646 (concluding there was sufficient evidence from which the trial court could have concluded that the trooper properly performed each step of the procedure).

[14] Based upon the record, we cannot say that the State did not establish that Officer Sims followed the applicable procedure in administering the breath test or that the trial court abused its discretion in admitting the breath test results.

## *Conclusion*

[15] For the foregoing reasons, we affirm Sanchez-Franco's conviction for operating with a blood alcohol content of .08 as a Class C misdemeanor.

[16] Affirmed.

Vaidik, C.J., and Bradford, J., concur.